**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**FLSA OPT-IN CLASS ACTION**
**JURY DEMANDED**

**MEGAN BRITT, BRETT HAWKINS,**
**STEVE HARBOUR, JASON NORMAN,**
**BRIAN MILEY, CLINT BUCKLEY,**
**JASON BAKER, and CHRIS CARNEY, individually,**
**and on behalf of all others similarly situated**                    **PLAINTIFFS**

                                                                      1:18cv38-SA-DAS
**VS.**                                        **CIVIL ACTION NO.:**＿＿＿＿＿＿＿

**MISSISSIPPI FARM BUREAU CASUALTY**
**INSURANCE COMPANY, SOUTHERN**
**FARM BUREAU LIFE INSURANCE**
**COMPANY, and SOUTHERN FARM BUREAU**
**CASUALTY INSURANCE COMPANY**                          **DEFENDANTS**

**INDIVIDUAL AND CLASS ACTION COMPLAINT**

    **COME NOW** Plaintiffs Megan Britt, Brett Hawkins, Steve Harbour, Jason Norman,

Brian Miley, Clint Buckley, Jason Baker, and Chris Carney, Sr., individually and as

representatives of all persons similarly situated, and bring this action against Defendants

Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Life Insurance

Company, and Southern Farm Bureau Casualty Insurance Company, an integrated enterprise that

jointly employed one or more of the Plaintiffs [hereinafter referred to collectively hereinafter as

"Farm Bureau"].

**INTRODUCTION**

    1.  This is a civil action for violation of the Fair Standards Labor Act of 1938, as

amended, 29 U.S.C . § 201 *et seq.* [hereinafter "FLSA" or the "Act"].  It is brought by Plaintiffs

on behalf of themselves and on behalf of all individuals similarly situated who work or worked

as insurance agents, anywhere in the United States, for Farm Bureau pursuant to contract and misclassified as independent contractors when, in fact, they were nonexempt employees.

2. Plaintiffs bring this action on behalf of themselves and on behalf of all those similarly situated, seeking to recover unpaid back wages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest.

3. This case implicates Farm Bureau's policy of misclassifying employees as independent contractors in an effort to avoid liability under the FLSA.

4. After misclassifying employees as independent contractors, Farm Bureau required or permitted Plaintiffs, and others similarly situated, to work as insurance agents in excess of 40 hours per week.

5. Farm Bureau refused or failed to keep proper records of hours worked as mandated by the FLSA.

6. Farm Bureau also refused or failed to compensate Plaintiffs, and others similarly situated, for their overtime work at the applicable overtime rate.

7. Farm Bureau's conduct violates the FLSA which requires employers to keep proper records of hours worked and to compensate nonexempt employees for their overtime work at a rate of one and one-half times their regular rate of pay. See 29 U.S.C. § 207(a).

8. Plaintiffs, as the putative class representatives, seek certification of this suit as a class action on behalf of all current and former misclassified agents of Farm Bureau.

## THE PARTIES

9. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

10. Plaintiff Megan Britt is an adult resident citizen of Clay County, Mississippi. Farm Bureau hired her in February 2015 to work as an insurance agent in its Columbus, Mississippi

office. It misclassified her as an independent contractor in an effort to avoid liability under the FSLA. Britt was so employed until her termination on February 10, 2017. During her employment, she regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

11. Plaintiff Brett Hawkins is an adult resident citizen of Forrest County, Mississippi. Farm Bureau hired him on December 1, 2014 to work as an insurance agent in its Hattiesburg, MS office. It misclassified him as an independent contractor in an effort to avoid liability under the FSLA. Hawkins is still employed with Farm Bureau. During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

12. Plaintiff Steve Harbour is an adult resident citizen of Lamar County, Mississippi. Farm Bureau hired him on January 1, 2001 to work as an insurance agent in its McComb, Mississippi office. It misclassified him as an independent contractor in an effort to avoid liability under the FSLA. Harbour was so employed until May 31, 2015. During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

13. Plaintiff Jason Norman is an adult resident citizen of Madison County, Mississippi. Farm Bureau hired him on January 1, 2015 to work as an insurance agent in its Brandon, Mississippi office. It misclassified him as an independent contractor in an effort to avoid liability under the FSLA. Norman was so employed until August 31, 2016. During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

3

14.  Plaintiff Brian Miley is an adult resident citizen of Amite County, Mississippi.  Farm Bureau hired him on January 1, 2004 to work as an insurance agent in its Woodville, Mississippi office.  It misclassified him as an independent contractor in an effort to avoid liability under the FSLA.  Miley was so employed until December 31, 2017.  During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

15.  Plaintiff Clint Buckley is an adult resident citizen of  Lamar County, Mississippi. Farm Bureau hired him on June 1, 1999 to work as an insurance agent in its Hazlehurst and Crystal Springs, Mississippi offices.  It misclassified him as an independent contractor in an effort to avoid liability under the FSLA.  Buckley was so employed until May 31, 2015.  During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

16.  Plaintiff Jason Baker is an adult resident citizen of Pearl River County, Mississippi. Farm Bureau hired him in August of 2008 to work as an insurance agent in its Picayune and Poplarville, Mississippi offices.  It misclassified him as an independent contractor in an effort to avoid liability under the FSLA.  Baker was so employed until  November of 2015.   During his employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

17.  Plaintiff Chris Carney, Sr. is an adult resident citizen of  Adams County, Mississippi. Farm Bureau hired him on January 1, 2015 to work as an insurance agent in its Natchez, Mississippi office.  It misclassified him as an independent contractor in an effort to avoid liability under the FSLA.  Carney was so employed until January 1, 2018.  During his

employment, he regularly worked in excess of forty (40) hours per week and did not receive overtime premium pay at any time during the class periods.

18.  Defendant Mississippi Farm Bureau Casualty Insurance Company is a Mississippi Corporation that may be served with process through its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

19.  Defendant Southern Farm Bureau Life Insurance Company is a Mississippi Corporation that may be served with process through its registered agent, Joseph A. Purvis, 1401 Livingston Lane, Jackson, Mississippi 39213.

20.  Defendant Southern Farm Bureau Casualty Insurance Company is a Mississippi Corporation that may be served with process through its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

## JURISDICTION AND VENUE

21.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

22.  This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337 (granting district courts original jurisdiction over civil action arising under any Act of Congress regulating commerce) and 29 U.S.C. § 216(b) (granting district court's jurisdiction over an action to recover the liability prescribed under the FSLA).

23.  Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this district.

## DEFENDANTS FORM A SINGLE ENTERPRISE AND ARE JOINT EMPLOYERS

24.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

5

25.  Farm Bureau constitutes a single enterprise under 29 U.S.C. § 203(r) because it is an integrated enterprise and/or performs related activities for a common business purpose.

26.  Farm Bureau engages in activities related to selling and servicing insurance policies under the Mississippi Farm Bureau aegis.

27.  Farm Bureau operates subject to common management and control.

28.  Farm Bureau has a unified operation, with each of the entities working together to offer different kinds of insurance in the Mississippi markets under a single Mississippi Farm Bureau identity.

29.  Farm Bureau has a unified, advertising mark (logo) which was established in 1988 to serve all participating companies.

30.  Farm Bureau has a shared brand positioning statement, "Helping You is What We Do Best."

31.  Farm Bureau is an integrated enterprise and its entities are joint employers of Plaintiffs and the similarly situated misclassified insurance agents.

32.  The Farm Bureau entities, formally or as a matter of practice, jointly determine, share or allocate the ability to direct, control or supervise the Plaintiffs and other misclassified agents, by both direct and indirect means.

33.    For example, Farm Bureau Agency Managers manage and supervise Farm Bureau Agents for the sale of all product lines sold by the Farm Bureau entities.  In turn, the Vice President of Sales manages and supervises the Agency Managers and is responsible for all the marketing efforts such as advertising and sales promotions for all product lines sold by the Farm Bureau entities.

34.  The Farm Bureau entities, formally or as a matter of practice, jointly determine, share or allocate the power, directly or indirectly, to hire or fire the Plaintiffs and other misclassified agents or to modify the terms and conditions of employment.  For example, Plaintiffs and other misclassified agents are or were subject to employment-related agreements with Farm Bureau whereby Farm Bureau misclassified them as independent contractors.  These agreements required the Plaintiffs and other misclassified agents to follow guidelines, instructions and rules contained within the companies' rate books, compliance manuals, guidelines, and other documents, which were subject to change at Farm Bureau's sole discretion. The same agreements reserve Farm Bureau's right to terminate the Plaintiffs and other misclassified agents at will.

35.  The relationships between the Farm Bureau entities are permanent and longstanding.

36.  The Farm Bureau entities operate subject to common management, supervision and control.

37.  Plaintiffs and other misclassified agents' day-to-day experience was that "Mississippi Farm Bureau" was their employer.  For example, supervisors and managers were considered to be working for "Mississippi Farm Bureau".  They managed Plaintiffs and other misclassified agents concerning all insurance lines sold, including all Mississippi Farm Bureau lines as well as casualty and life lines sold by Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

38.  Plaintiffs and other misclassified agents received pay from Mississippi Farm Bureau entities and Southern Farm Bureau entities.  Facilities, computers and office supplies were supplied by Farm Bureau entities and were used for all work done by the Plaintiffs and other

7

misclassified agents, including selling and servicing policies issued by each of the Farm Bureau companies.

## FLSA COVERAGE

39. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

40. The named Plaintiffs bring Cause of Action – Count I of this Complaint as a class action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. The putative class is defined as:

> all individuals who, through a contract or agreement with Farm Bureau, perform or performed as insurance agents for Farm Bureau and who were classified by Farm Bureau as "independent contractors" anywhere in the state of Mississippi at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join in this action pursuant to 29 U.S.C. § 216(b).

The putative class also includes the Plaintiffs named in this action [hereinafter the "Named Plaintiffs"]. Plaintiffs reserve the right to modify this definition prior to conditional certification of the putative class.

41. The Named Plaintiffs, along with current and former misclassified agents of Farm Bureau, are similarly situated in that they have or had substantially similar job requirements, pay provisions, and are subject to Farm Bureau's common practice, policy or plan controlling their daily job functions.

42. At all material times, the Farm Bureau entities were employers within the meaning of the FLSA. See 29 U.S.C. § 203(d).

43. The Farm Bureau entities controlled the nature, pay structure, and employment relationship with Plaintiffs.

44. The Farm Bureau entities, at all relevant times, had the authority to hire and fire insurance agents, the authority to direct, supervise and manage the work of insurance agents, the

authority to sign on the companies' checking accounts, including payroll accounts, and the authority to make decisions regarding insurance agents' compensation and capital expenditures.

45. Additionally, the Farm Bureau entities were responsible for the day-to-day affairs of the business. In particular, they were responsible for determining whether they complied with the FLSA.

46. As such and pursuant to 29 U.S.C. § 203(d), the Farm Bureau entities acted directly or indirectly in the interest of Plaintiffs' employment as their employer which makes them liable under the FLSA.

47. Furthermore, at all material times, the Farm Bureau entities have been an enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce within the meaning of 29 U.S.C. § 203(s)(1) of the FLSA because they have or have had employees engaged in interstate commerce. See 29 U.S.C. § 203(s)(1).

48. The Farm Bureau entities acted in related activities performed through a unified operation and common control for a common business purpose (i.e., to sell and service insurance policies under the Mississippi Farm Bureau aegis).

49. The Farm Bureau entities have had, and continue to have, an annual gross volume of sales made or business done of not less than $500,000.00. See 29 U.S.C. § 203(s)(1).

## FSLA CLASS ACTION ALLEGATIONS

50. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

51. Farm Bureau regularly permitted and required the Named Plaintiffs and members of the putative class to work more than 40 hours per week without overtime compensation.

52. Upon information and belief, Farm Bureau knew that the Named Plaintiffs and all similarly situated individuals performed work that required overtime pay.

53. Farm Bureau has therefore operated under a scheme to deprive these misclassified agents of overtime compensation by failing to properly compensate them for all time worked.

54. Farm Bureau's conduct, as set forth in this Complaint, was willful and has caused significant damage to the Named Plaintiffs and all similarly situated individuals.

55. Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" class action pursuant to 29 U.S.C. § 216(b) because the claims of the Named Plaintiffs are similar to the claims of current and former misclassified agents who work and/or have worked for Farm Bureau. Plaintiffs will fairly and adequately protect the interests of the class. Therefore, the Named Plaintiffs should be permitted to bring this action as a class action and on behalf of themselves and those similarly situated individuals pursuant to the "opt-in" provision of the FLSA, 29 U. S. C. § 216(b).

56. Counsel for the Plaintiffs has conducted significant investigation as to potential claims and parties in this case.

57. Prosecuting this case as a class action for similarly situated employees who have been unlawfully and/or wrongfully denied overtime wages will promote judicial efficiency and will best protect the interests of the class members.

58. Counsel for the Plaintiffs is knowledgeable and experienced in the field of employment law and can and will fairly and competently represent the interest of all class members.

59. Counsel for the Plaintiff has and will commit the human and financial resources necessary to represent the class.

60. Farm Bureau is liable under the FLSA for failing to keep proper records of hours worked as mandated by the FLSA and for failing to properly compensate the Named Plaintiffs

and all similarly situated individuals, and notice of this lawsuit should be sent to all similarly situated individuals. Those similarly situated individuals are known to Farm Bureau and are readily identifiable through Farm Bureau's records.

**FACTS**

61. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

62. The Named Plaintiffs and all similarly situated misclassified agents have all been victimized by Farm Bureau's common policy and plan to violate their rights under the FSLA by denying them proper overtime compensation.

63. Farm Bureau operates a business enterprise of selling and servicing insurance and insurance-related products and services including auto insurance, homeowner's insurance, renter's insurance, manufactured home insurance, farm & ranch insurance, property insurance, health insurance and life insurance.

64. The primary job duties of the Named Plaintiffs and the similarly situated misclassified agents were selling and servicing Farm Bureau's insurance services and products.

65. The services provided by Plaintiffs and other similarly situated insurance agents were integrated into Farm Bureau's business operation of selling and servicing insurance products, which is inconsistent with a bona fide independent-contractor classification.

66. Plaintiffs and others similarly situated sold and serviced policies exclusively from Farm Bureau and were prohibited from selling and servicing insurance for other companies while working for Farm Bureau.

67. Alternatively, Farm Bureau limited and controlled the policies, products and services Plaintiffs and others similarly situated could sell, and only a select group of agents statewide were allowed to write Blue Cross Blue Shield health insurance policies.

11

68. Farm Bureau issued business cards to Plaintiffs and others similarly situated with its name and logo which identified Plaintiffs and others similarly situated as insurance agents for Farm Bureau. Alternatively, Farm Bureau required Plaintiffs and others similarly situated to acquire business cards with its name and logo which identified Plaintiffs and others similarly situated as insurance agents for Farm Bureau.

69. The work of Plaintiffs and others similarly situated was/is closely and directly supervised, managed and/or controlled by other Farm Bureau employees.

70. Farm Bureau provided Plaintiffs and others similarly situated with email addresses.

71. Plaintiffs and others similarly situated were required or encouraged to use a signature that identified them as Farm Bureau agents.

72. Farm Bureau alone set the price of insurance policies sold by Plaintiffs and others similarly situated.

73. Farm Bureau controlled the substantive content of all signage, advertising, marketing and/or promotions done on its behalf. Plaintiffs and others similarly situated who wished to advertise and/or market were required to have their advertisements and/or marketing materials approved by Farm Bureau. They were required to have their signage approved by Farm Bureau. They were also required to pay into an agent's fund for office expenses, advertising and marketing and to turn in receipts to Agency Managers.

74. Farm Bureau controlled the placement of policies and could remove a policy from one agent and give it to another, thereby assigning the commission from the first agent and giving it to the second. Similarly, Farm Bureau's Agency Managers held and retained the right to recode any account of any agent at any time without agent approval or authorization.

75. Farm Bureau required the Plaintiffs and others similarly situated to attend meetings and training sessions.

76. Farm Bureau's investment in infrastructure designed to underwrite, administer and pay claims of the insurance products sold by Plaintiffs and others similarly situated far exceeded any investment by the Plaintiffs and other similarly situated.

77. Plaintiffs and others similarly situated worked for Farm Bureau for years and even decades.

78. Plaintiffs and other misclassified agents similarly situated frequently and routinely worked over 40 hours per week.

79. Plaintiffs and others similarly situated are and/or were nonexempt Farm Bureau employees.

80. Farm Bureau failed to make payroll tax or other withholdings from monies paid to Plaintiffs and other similarly situated insurance agents.

81. Farm Bureau illegally and/or wrongfully classified their insurance agents, including the Named Plaintiffs, as independent contractors; however, they were actually employees as that term is defined by the FSLA and relevant case law.

82. Farm Bureau controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and other similarly situated misclassified insurance agents. It prohibited Plaintiffs and other similarly situated agents from assigning any of their rights to third parties.

83. Farm Bureau set and/or closely monitored and effectively controlled the work and vacation schedules for Plaintiffs and other similarly situated misclassified insurance agents. It required its agents to submit to quarterly evaluations with Agency Managers where they were

evaluated on sales performance, punctuality, appearance, community involvement, product knowledge, and attitude.

84. Farm Bureau retained the right to discipline insurance agents for not following its company rules.

85. Farm Bureau tracked the days and time its insurance agents worked. It set and/or controlled agent work hours and/or required its agents to sign out when leaving their offices.

86. Farm Bureau instructed its insurance agents regarding when, where and how they were to perform their work. It required its agents to conduct a certain number of reviews per year.

87. Farm Bureau, the Named Plaintiffs, and others similarly situated contemplated that the employment relationship between Farm Bureau and its insurance agents would be for a long and indefinite time period.

88. Farm Bureau determined the location of the branch offices from which agents worked.

89. Farm Bureau provided the physical facilities and requirements of the work and regulates behavior in the facilities.

90. Farm Bureau customers made payments directly to Farm Bureau for purchased services and products. They did not pay Plaintiffs or others similarly situated for the services and products they offered.

91. Plaintiffs and others similarly situated were required to sign non-complete agreements.

92. Plaintiffs and others similarly situated were required to meet company quotas set by State Sales Managers, District Sales Managers, and/or Agency Managers.

93. Plaintiffs and others similarly situated were treated as "at will" employees.

94. Plaintiffs and others similarly situated were required to adhere to business ethics and codes of conduct set by Farm Bureau.

95. Plaintiffs and others similarly situated were required to taking continuing education courses on business ethics through a company-based education system.

96. Farm Bureau owned and/or maintained control of the books of business of policy holders rather than Plaintiffs and other similarly situated Farm Bureau insurance agents. It provided agents with potential customers to contact and maintained control over all information related to clients and/or policy holders.

97. Farm Bureau set and controlled the dress code for its agents.

98. Farm Bureau required Plaintiffs and others similarly situated to attend mandated meetings (including weekly meetings, district meetings, and state meetings) and to prepare mandated production reports and business plans.

99. Farm Bureau retained the right to unilaterally fire its insurance agents without their consent, authorization or approval.

100. Farm Bureau provided and required Plaintiffs and its other agents to use the computer and software components it provided.

101. Farm Bureau dictated, monitored and/or controlled agent computer usage. For example, it monitored website usage and retained and exercised the right to block websites at its sole discretion. It monitored and controlled storage of information, deletions, search histories, and email correspondence.

102. Farm Bureau set, imposed and required Plaintiffs and other similarly situated agents to comply with its document retention requirements.

103.  Farm Bureau set and controlled production requirements for its agents.

104.  Plaintiffs and other similarly situated agents were prohibited from writing property and casualty insurance across county lines without prior approval from Farm Bureau.

105.  Farm Bureau discouraged its agents from incorporating.

106.  Farm Bureau required Plaintiffs and other similarly situated agents to sell and collect Farm Bureau Federation Memberships to customers as a prerequisite to selling them insurance products and services.

107.  Farm Bureau required Plaintiffs and others similarly situated to call customers and collect past due federation memberships.

108.  Farm Bureau required some or all of its agents to pay payroll into an account owned by its Agency Managers.

109.  Farm Bureau's Agency Managers required some or all of the Farm Bureau agents to give raises to and pay additional payroll expenses for their secretaries.

110.  Farm Bureau required its agents to pay into an account for postage and paper.  Each agent was required to pay the same amount regardless of the number of clients each agent had or the book of business each agent wrote.

111.  Farm Bureau misclassified Plaintiffs and other similarly situated insurance agents as independent contractors to avoid the obligation to pay them pursuant to the FLSA.

112.  Farm Bureau's mischaracterization of Plaintiffs and other similarly situated insurance agents as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Farm Bureau and the agents, and the attendant deprivation of substantial rights and benefits of employment, including the refusal to pay overtime wages as

required by the FSLA, are part of an on-going unlawful practice by Farm Bureau which this Court should enjoin.

113.  Plaintiffs' Consents to Join as Class Representatives are attached hereto and incorporated herein as Exhibits "1," "2," "3," "4," "5," "6," "7" and "8."

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF 29 U.S.C. § 207.

114.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

115.  Farm Bureau's practice of failing to pay Plaintiffs and other agents similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.  See 29 U.S.C. § 207(a)(1).

116.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to Farm Bureau or the Plaintiffs.

117. Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 207.

### COUNT II

### VIOLATION OF 29 U.S.C. § 211(c)

118.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

119.  Farm Bureau failed to keep adequate records of the work hours and pay of Plaintiffs and other similarly situated agents in violation of the FSLA.  See 29 U.S.C. § 211(c).

120.  Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 211(c).

**WILLFULNESS**

121.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

122.  Farm Bureau's failure to pay Plaintiffs and other similarly situated agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

123.  Farm Bureau was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

124.  Farm Bureau was aware of the specific job duties of its agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

125.  Farm Bureau knew that the position of insurance agent as the job was intended and was performed by Plaintiffs and other similarly situated agents was consistent with an employment relationship under the FLSA and that it was improper to classify the agents as independent contractors.

126.  Farm Bureau knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated agents when it classified them as exempt independent contractors.

127.  Farm Bureau willfully misclassified the positions of Plaintiffs and other similarly situated agents as exempt.

**DAMAGES AND ATTORNEY'S FEES**

128.  Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

129.  Plaintiffs and others similar situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

130.  Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

## JURY DEMAND

131.  Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

132.  For these reasons, Plaintiffs respectfully request the following relief on behalf of themselves, all members of the Class Action, and all other similarly situated individuals:

a.  That the Court certify the putative class named in this Complaint as an opt-in class action under 29 U.S.C. § 216(b) and enter an order allowing this action to proceed as a class action under said statute;

b.  That the Court declare the rights and duties of the parties consistent with the relief sought herein;

c.  That the Court issue a declaratory judgment that Farm Bureau's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA;

d.  That the Court enjoin Farm Bureau from committing further violation of the FLSA;

e.  That the Court award Plaintiffs and the other putative class members overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

f.  That the Court award Plaintiffs and the other putative class members equal amounts of all owed wages as liquidated damages as allowed under the FLSA;

g.  That the Court award Plaintiffs and the other putative class members reasonable attorney's fees, costs, pre-judgment interest, post-judgment interest and expenses;

h.  That the Court award appropriate incentive awards for any class representatives;

i.  That the Court award Plaintiffs and the putative class members such additional relief as the interests of justice may require; and

j.  That a jury be impaneled to try this case.

Respectfully submitted, this 28 day of February, 2018.

**MEGAN BRITT, BRETT HAWKINS, STEVE HARBOUR, JASON NORMAN, BRIAN MILEY, CLINT BUCKLEY, JASON BAKER, and CHRIS CARNEY**

By:

s/ S. Ray Hill, III
S. RAY HILL, III, MSB # 100088
DANA G. DEARMAN, MSB # 8681
*Attorneys for Plaintiffs*

**OF COUNSEL:**

CLAYTON O'DONNELL, PLLC
P. O. Drawer 676
Oxford, MS 38655
Tel. (662) 234-0900
rhill@claytonodonnell.com

P. O. Box 755
Tupelo, MS 38802-0755
Tel. (662) 620-7938
ddearman@claytonodonnell.com