**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

MEGAN BRITT, BRETT HAWKINS,
STEVE HARBOUR, JASON NORMAN,
BRIAN MILEY, CLINT BUCKLEY,
JASON BAKER, and CHRIS CARNEY,
individually and on behalf of others similarly situated          PLAINTIFFS

VS.                                        CIVIL ACTION NO. 1:18-CV-38-GHD-DAS

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY, SOUTHERN
FARM BUREAU LIFE INSURANCE
COMPANY, and SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY                          DEFENDANTS

---

**DEFENDANT SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY'S
MEMORANDUM BRIEF IN SUPPORT OF ITS RESPONSE TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE
ACTION AND FOR COURT-APPROVED NOTICE**

---

Cathleen Bell Bremmer
CARLTON FIELDS JORDEN BURT, P.A.
4221 West Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

Irma Reboso Solares
Stephanie A. Fichera
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2113
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

Markham R. Leventhal (MSB #101091)
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street
Suite 400 West
Washington, D.C. 20007
Telephone: (202) 965-8189
Facsimile: (202) 965-8104

*Attorneys for Defendant
Southern Farm Bureau Life Insurance Company*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................. 8

ARGUMENT ...................................................................................................... 14

I.  THE COURT SHOULD REJECT PLAINTIFFS' APPLICATION OF THE
    FIRST STAGE OF THE *LUSARDI* APPROACH AND INSTEAD APPLY
    RULE 23 TO ANY DECISION REGARDING CONDITIONAL CLASS
    CERTIFICATION ....................................................................................... 15

    A.  The Rules Enabling Act Requires Application of Rule 23 To Plaintiffs'
        Request To Proceed In A Representative Capacity ............................... 15

    B.  The Court Should Follow The Rule 23 Approach Outlined By The District
        Court In *Shushan*............................................................................... 16

    C.  Application Of Rule 23 Is More Consistent With Due Process
        Considerations Than The Two-Step Procedure Represented By *Lusardi* ........... 17

    D.  Judicial Economy Would Not Be Served By Conditional Certification
        Under A Two-Stage Approach ............................................................. 18

    E.  The Certification Motion Should Be Denied Because Plaintiffs Have
        Failed To Meet Their Burden Under Rule 23 ....................................... 20

II. REGARDLESS OF THE PROCEDURE USED, CERTIFICATION SHOULD
    BE DENIED BECAUSE PLAINTIFFS ARE NOT "SIMILARLY SITUATED"
    TO THE PROPOSED CLASS......................................................................... 20

    A.  The Presence Of FLSA Exemption Defenses Makes Certification
        Untenable ........................................................................................... 21

    B.  The Court Should Deny Certification Because The Independent Contractor
        Issues In This Case Create Individualized Issues That Are Inappropriate
        For Collective Action Treatment ......................................................... 24

    C.  The Plaintiffs Have Failed To Provide Any Credible Evidence That They
        Are "Similarly Situated" To Other Agents In Their Proposed Class.................. 26

CONCLUSION .................................................................................................................. 28

CERTIFICATE OF SERVICE ......................................................................................... 29

Defendant Southern Farm Bureau Life Insurance Company ("SFB Life") hereby files this response in opposition to Plaintiffs' "Motion for Conditional Certification of Collective Action and for Court-Approved Notice to Potential Plaintiffs" (Docket No. 63) (the "Certification Motion" or "Motion"). For the reasons set forth below, the Court should deny the Motion. The Court should address the issue of certification after discovery when the Court can make a fully informed determination regarding whether the named Plaintiffs are in fact "similarly situated" to others in their proposed class. Independently, even based on the limited record available now, certification is inappropriate because the Plaintiffs are not similarly situated to the proposed class.

## INTRODUCTION

Plaintiffs in this action are thirteen former insurance agents who entered into separate contracts with Defendants SFB Life and Mississippi Farm Bureau Casualty Insurance Company ("Mississippi Farm Bureau") to sell a variety of insurance products in this State.[1] Plaintiffs expressly agreed and acknowledged in their contracts that they would be operating as "independent contractors," and not as employees, when selling insurance and servicing customers for the Defendants.[2] At no time when their contracts were in force did the Plaintiffs notify Defendants that they believed they were "employees" or that they should be paid extra compensation. Plaintiffs have now abandoned their prior agreements, claiming in this action that

---

[1] Eight of these agents are named Plaintiffs, and five of these agents subsequently filed consent forms to opt-in to this action.

[2] *See* Declaration of Michael Heard (Docket No. 26-1), Exhs. 1-8, ¶ 2.A (Agent Contracts) (Plaintiffs "agree to … [o]perate as an independent contractor to provide the selling and prompt and skillful service essential to the creation and maintenance of successful multi-line companies and agencies. … You understand and agree that, as an independent contractor, you shall not participate in any plans, benefits, programs, or be subject to any employment rules, regulations or policies of the Company which are applicable to the Company's employees."); *see also* Docket Nos. 22-1 to 22-8, ¶ 2.A (Mississippi Farm Bureau Agent Contracts).

they were "employees" under the Fair Labor Standards Act (the "FLSA"). Plaintiffs also allege in conclusory fashion that they were "nonexempt" under the FLSA,[3] and that they worked in excess of 40 hours a week, entitling them to "overtime" compensation. Complaint ¶¶ 3-6.

Plaintiffs' Complaint seeks to undermine the entire Farm Bureau system of insurance agents and agencies that has served farmers, ranchers, and the Mississippi community for over fifty years. In their Certification Motion, Plaintiffs ask this Court to "conditionally certify" a proposed "class" consisting of approximately 325 current and former insurance agents, including over 220 current agents who are the lifeblood of Defendants' business, actively selling policies and servicing customers throughout the State.[4] Plaintiffs' Motion further asks the Court to authorize Plaintiffs to send a notice to all of Defendants' agents, insinuating that the Defendants have acted unlawfully by "misclassifying" the agents and failing to pay "overtime," and inviting hundreds of agents to join in this lawsuit. Plaintiffs' notice would seriously disrupt the Defendants' business, harm Defendants' reputation in the community, and destroy the goodwill and business relationships that the Defendants have developed with their agents over decades.

Plaintiffs argue that a notice is proper pursuant to 29 U.S.C. § 216(b) because they are "similarly situated" to their proposed "class" of all other former and current agents.[5] In order to determine whether notice should be sent to the proposed class, Plaintiffs argue that this Court

---

[3] First Amended Complaint (Docket No. 10) ¶¶ 1, 7, 103 (hereinafter cited as "Complaint").

[4] Declaration of Henry Hamill ¶ 3 ("Hamill Decl."); Declaration of Rena Warren ¶ 5 ("Warren Decl."). Copies of the Hamill and Warren Declarations are attached as Exhibits A and B, respectively, to Defendant Southern Farm Bureau Life Insurance Company's Response in Opposition to the Certification Motion (the "Response").

[5] 29 U.S.C. § 216(b) provides in pertinent part: "An action … may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated*" (emphasis added).

should apply the "first stage" of the so-called "*Lusardi* approach," a "fairly lenient standard," under which "[t]he plaintiff's burden is low," only a "minimal showing" is required, and which "typically results in conditional certification of a representative class."[6]  Plaintiffs' Motion concedes, however, that the Fifth Circuit has never endorsed the *Lusardi* approach.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995) ("we specifically *do not* endorse the [*Lusardi*] methodology employed by the district court, and *do not* sanction any particular methodology") (emphasis in original), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).[7]

An alternative to *Lusardi* is a *one-step* procedure that utilizes the principles of Rule 23. *See Mooney*, 54 F.3d at 1214 (citing *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Col. 1990)).   This Court previously used the Rule 23 approach in *Swoope v. BellSouth Telecommunications, Inc.*, 1998 WL 433952, at *5 (N.D. Miss. June 23, 1998) (citing *Mooney*). On its face, Rule 23 appears directly applicable to any representative action.   Rule 23 provides that "[o]ne or more members of a class *may sue … as representative parties* on behalf of all members <u>*only if*</u>" certain requirements are met, including numerosity, commonality, typicality, and adequacy.   Fed.R.Civ.P. 23(a) (emphasis added).   There is no reason why these principles cannot or should not be applied to a proposed "opt-in" class under § 216(b).[8]   As the *Shushan* court explained:

---

[6] Memorandum Brief in Support of Motion for Conditional Certification of Collective Action and for Court-Approved Notice to Potential Plaintiffs at 5-6 ("Pls.' Brief").

[7] *See* Pls.' Brief at 3 ("The Fifth Circuit Court of Appeals has never set the legal standard for collective action certification.").

[8] Some commentators have argued that the Rules Enabling Act, 28 U.S.C. § 2072, requires application of Rule 23 to determine whether named plaintiffs can represent others in an FLSA action.  *See* Allan G. King, et al., *You Can't Opt Out of the Federal Rules:  Why Rule 23* (*footnote continued on next page*)

> While the "opt-in" feature of section 216 is manifestly "irreconcilable," with the "opt-out" feature of rule 23, **it does not necessarily follow that every other feature of rule 23 is similarly irreconcilable with section 216**. Cases holding that rule 23 is wholly inapplicable in ADEA actions are premised partly on this *non sequitur*, and that is part of the reason they do not seem entirely persuasive.

132 F.R.D. at 266 (citations omitted, emphasis added). The *Shushan* court properly concluded that it would not certify a class under § 216(b) unless the requirements of Rule 23 were satisfied. *See id.* at 268; *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013) ("despite the difference between a collective action and a class action …, there isn't a good reason to have different standards for the certification of the two different types of action"). Applying the principles of Rule 23, and requiring Plaintiffs to satisfy a meaningful burden of proof, is more efficient and consistent with due process, and ensures that notice is not prematurely sent to persons who are not in fact "similarly situated." Plaintiffs provide no argument why applying two separate steps under the *Lusardi* approach is more appropriate.[9]

Regardless of which procedural approach is used, the record evidence collected thus far shows unequivocally that, even if agents in the proposed class were "employees" as opposed to independent contractors (which Defendants deny), many, if not all, of the agents would be exempt from the overtime provisions of the FLSA. For example, the FLSA provides an exemption for those who are employed "in the capacity of outside salesman." 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500(a). Multiple courts have applied the outside sales exemption to

---

*Certification Standards Should Apply to Opt-In Collective Actions Under the FLSA*, 5 Fed. Cts. L. Rev. 1, 6, 14 (2011); *see infra* pp. 15-16.

[9] Plaintiffs simply state that a majority of district courts have used the *Lusardi* approach. Pls.' Brief at 4. Most of these decisions, however, contain no meaningful analysis of *Lusardi* versus Rule 23, and most do not involve a claim of "misclassification." Moreover, as noted, the Fifth Circuit has not endorsed *Lusardi*. *Mooney*, 54 F.3d at 1216.

insurance agents.[10]  In addition, the FLSA provides an "administrative" exemption, which can apply to insurance agents,[11] and another exemption exists for "highly compensated" individuals earning in excess of $100,000 per year.  29 C.F.R. § 541.601.  The evidence shows that a large number of agents in the proposed class are highly compensated.[12]

The record here also contains persuasive evidence indicating that many of the agents in the proposed class will be exempt under the outside sales exemption or the administrative exemption.[13]  Where "[the proposed class] definition includes both exempt and nonexempt employees, then the members of the putative class *cannot be similarly situated*."[14]  The existence

---

[10] *See, e.g.*, *Lane v. Humana Marketpoint, Inc.*, 2011 WL 2181736, at *9 (D. Idaho June 3, 2011); *Gold v. New York Life Ins. Co.*, 2011 WL 2421281, at *3-4 (S.D. N.Y. May 19, 2011); *Lint v. Northwestern Mut. Life Ins. Co.*, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010); *Bouder v. Prudential Fin., Inc.*, 2010 WL 3515567, at *5 (D. N.J. Aug. 31, 2010); *Chenensky v. New York Life Ins. Co.*, 2009 WL 4975237, at *5-7 (S.D.N.Y. Dec. 22, 2009); *Weisgerber v. Allstate Ins. Co.*, 2001 WL 36413167, at *6 (D. Colo. Mar. 9, 2001); *see also* DOL Wage Hour Op. Ltr. No. FLSA2009-28 (Jan. 16, 2009), *available at* https://www.dol.gov/whd/opinion/FLSA/ 2009/2009_01_16_28_FLSA.pdf.

[11] DOL Wage Hour Op. Ltr. No. FLSA2009-28, *supra* note 10; *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 627-628 (11th Cir. 2004) (assuming without deciding that insurance agent was an employee and finding that agent met administrative exemption under the FLSA); *Wilshin v. Allstate Ins. Co.*, 212 F.Supp.2d 1360, 1379 (M.D. Ga. 2002) (employed agent met administrative exemption).

[12] Hamill Decl. ¶ 6 (for the calendar year 2017, commissions paid to agents for Mississippi Farm Bureau policies alone ranged from $233,370 to $42,785, with 29% of all agents earning over $100,000 for the year).  To the extent any of the FLSA exemptions require a minimum amount of compensation under the so-called "salary basis test," Defendants contend that based upon the size of their respective books of business and amount of renewal commissions, all or virtually all agents were effectively guaranteed to receive more compensation than the amount required by 29 C.F.R. § 541.600 to qualify for the exemptions.

[13] *See* Declaration of Tim Ball ("Ball Decl."), copy attached to Response as Exhibit C; Declaration of Robert Carollo ("Carollo Decl."), copy attached to Response as Exhibit D; Declaration of Ray Ladner ("Ladner Decl."), copy attached to Response as Exhibit E; Declaration of Tiffanie Stout ("Stout Decl."), copy attached to Response as Exhibit F; Declaration of Deborah Alford ("Alford Decl."), copy attached to Response as Exhibit G.

[14] *Blake v. Hewlett-Packard Co.*, 2013 WL 3753965, at *11, 12 (S.D. Tex. July 11, 2013) (*footnote continued on next page*)

of fact-intensive exemption defenses creates individualized issues making "collective" action treatment inappropriate. *See, e.g.*, *Burke v. Mgmt. & Training Corp.*, 2018 WL 4038115, at *3 (N.D. Miss. Aug. 23, 2018) (decertifying class because executive exemption defense would result in the parties "conducting separate minitrials to resolve each individual's claim"). Here, given the high likelihood that exemption defenses will have widespread applicability, and the fact that exemptions can only be resolved on an agent by agent basis, class certification as a representative or "collective" action is not appropriate. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("[T]he Court finds that litigating this case as a collective action would be anything but efficient. The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis.").

In addition to individual exemptions, the testimony from multiple agents shows that they are indeed operating as independent contractors, setting their own schedules, and developing and controlling their own sales methods.[15] As independent contractors, these agents are afforded substantial freedom and flexibility to hire assistants and build their business as they deem appropriate. *See id.* They are also paid on a commission basis (including annual renewal

---

(emphasis added) (denying certification and noting: "The importance of the HP employees' affidavits … is not that they impact the merits of Blake's claim, but that they undermine the usefulness of his class definition; for if that definition includes both exempt and nonexempt employees, then the members of the putative class cannot be similarly situated."); *see also Lipnicki v. Meritage Homes Corp.*, 2014 WL 5620603, at *5 (S.D. Tex. Nov. 4, 2014) ("Plaintiffs' testimony regarding what actually occurred 'on the ground' varies significantly with respect to considerations relevant to the outside sales determination. These disparities convince the Court that all of the opt-ins are not similarly situated.").

[15] *See* Ball Decl. ¶¶ 4-6, 11, 14, 17; Carollo Decl. ¶¶ 3-7, 12; Ladner Decl. ¶¶ 5-6, 9-10; Stout Decl. ¶¶ 4-6, 9; Alford Decl. ¶¶ 6, 9.

commissions), and their opportunity for substantial profit is entirely within their control.[16]  These agents are "in business" for themselves as bona fide independent contractors and are not "similarly situated" to Plaintiffs claiming to be "employees."  *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998).

"[T]he ultimate purpose of the similarly situated inquiry is to determine whether hearing the cases together promotes judicial efficiency."  *Blake*, 2013 WL 3753965, at *4 (internal quotations and citation omitted).  When the record reveals significant problems with ultimate collective action treatment, including individual exemption defenses, "the Court should [not] simply ignore the fact that certain individualized defenses might apply and postpone the issue until decertification."  *Clay v. Huntington Ingalls, Inc.*, 2012 WL 860375, *2 (E.D. La. Mar. 13, 2012) (citation omitted).  There is no judicial efficiency in inviting hundreds of non-parties to join in a flawed collective action, only to decertify the action and dismiss anyone who opted in a few months later.  Certifying a collective action at this time and sending a notice to over 300 agents would result in an enormous waste of resources and a costly and unwarranted disruption of Defendants' business.

For these reasons and those set forth below, the Court should enter an order denying the Certification Motion.

---

[16] The payment of commissions is a factor indicating an independent contractor status, not employee status.  *Jammal v. Am. Family Ins. Grp.*, 2017 WL 3268032, at *16 (N.D. Ohio Aug. 1, 2017) ("The payment of commissions based on sales, rather than payment of a set salary supports an independent contractor relationship."); *Cosgriff v. Valdese Weavers LLC*, 2012 WL 1071497, at *9 (S.D.N.Y. Mar. 30, 2012) (fact that defendant paid plaintiff on the basis of commissions only was one of several factors that supported conclusion that plaintiff was an independent contractor); *Weisgerber v. Allstate Ins. Co.*, 2001 WL 36413167, at *5 (D. Colo. Mar. 9, 2001) (noting as an indicia of independent contractor status under the FLSA that "Plaintiff was paid on a straight commission basis… Therefore, Plaintiff had control over his own profits and losses.").

## **FACTUAL BACKGROUND**

Mississippi Farm Bureau and SFB Life each enter into separate contracts with insurance agents across this State governing the sale of each company's separate products. The contracts expressly provide, and the agents acknowledge and agree that they will be operating as independent contractors. For example, the Agent Contracts with SFB Life provide that each Plaintiff will "[o]perate as an independent contractor to provide the selling and prompt and skillful service essential to the creation and maintenance of successful multi-line companies and agencies." Heard Decl. (Docket No. 26-1) ¶¶ 4-11 & Exhs. 1-8, ¶ 2.A. Under the contracts, Plaintiffs "have the right to control [their] daily activities and means by which the provisions of th[e] contract are carried out. [Plaintiffs have] the right to exercise independent judgment as to the persons from whom applications for insurance policies and annuity contracts will be solicited, and the right to determine the time, place, and manner of soliciting and servicing policyholders and contract holders of [SFB Life. SFB Life] will not prescribe and furnish the details of the kind and character of work to be done by [Plaintiffs] hereunder." *Id.* ¶ 2.A (emphasis added).[17]

As independent contractors, the agents set their own schedules, design their own marketing and sales techniques, and run their own businesses. *See infra* pp. 9-13. Many of the agents form corporations and limited liability companies to structure their business. Hamill Decl. ¶ 3 (26 agents currently under contract with Mississippi Farm Bureau are contracted as

---

[17] Similarly, Plaintiffs' Agent Contracts with Mississippi Farm Bureau provide that each Plaintiff will "[o]perate as an independent contractor and provide the creative selling, professional counseling, and prompt and skillful service essential to the creation and maintenance of successful multi-line companies and agencies." Docket Nos. 22-1 – 22-8, ¶ 2.A.

corporations or limited liability companies). Contrary to the Complaint,[18] the agents can and do sell insurance for many other companies besides the Defendants.[19] As independent contractors, the agents do not have any upward ceiling on how much they can earn. Of 209 agents under contract with Mississippi Farm Bureau in 2017, annual earnings from the sale of Mississippi Farm Bureau policies alone ranged from $233,370 to $42,785, and 29% of the agents earned over $100,000. Hamill Decl. ¶ 6. The total annual commissions separately paid by SFB Life to agents for 2017 ranged from zero to a high of $80,889. Warren Decl. ¶ 6.[20]

From November 1, 2015 through the present, the agents in Plaintiffs' proposed class operated out of 113 different offices, including 81 county farm bureau offices, which were managed by 72 different agency managers, in three different regional districts (there were four regional districts until January 1, 2018). Hamill Decl. ¶ 5. The thirteen Plaintiffs and opt-ins in this case collectively worked out of 11 of those offices. *Id.*

## Putative Class Members

Although Plaintiffs filed their Certification Motion prior to any formal discovery, Defendants have collected evidence including compelling testimony from five agents who are within the proposed class defined by the Plaintiffs. These putative class members, who come from various Counties across the State, present substantial evidence that they are in fact operating as bona fide independent contractors, and even if they were operating as "employees"

---

[18] The Complaint falsely alleges that "Plaintiffs and others similarly situated sold and serviced policies exclusively from Farm Bureau and were prohibited from selling and servicing insurance for other companies while working for Farm Bureau." Complaint ¶ 90.

[19] Hamill Decl. ¶ 9; Warren Decl. ¶ 8; Alford Decl. ¶ 3; Ladner Decl. ¶ 3; Stout Decl. ¶ 3; Ball Decl. ¶ 3.

[20] *See Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2173 (2012) (pharmaceutical sales representatives averaging $70,000 per year "are hardly the kind of employees that the FLSA was intended to protect").

(which Defendants deny), they would be exempt under the FLSA outside sales, administrative, or other exemptions.

**Tim Ball**

Tim Ball has been an insurance agent for the Defendants in DeSoto County for almost 35 years. Ball Decl. ¶ 2. The agency manager for DeSoto County does not impose any restrictions on Mr. Ball; the manager does not have any rules about when Mr. Ball should be in the office, or the schedule that he works, and Mr. Ball is free to come and go as he sees fit. *Id*. ¶¶ 5, 7. Mr. Ball works for himself and controls his own success. *Id*. ¶ 4. None of the Defendants control how he does his work; who he sells to; when, where, or how often he meets with clients; or how he schedules his appointments or vacations. He is free to decide how he hits his production goals, including the types of products to sell. *Id*. ¶¶ 10-12. Most days, he spends 4-5 hours in the office. *Id*. ¶ 12.

Mr. Ball maximizes his productivity and flexibility to take vacations and time off by employing a Customer Service Representative ("CSR"), who handles many aspects of his business. *Id*. ¶ 9. He reimburses the county farm bureau for the portion of her salary attributable to the time that she does work for him. *Id.* Mr. Ball regularly engages in substantial activity outside of the office. Most afternoons he meets clients for sales and networking opportunities, to get signatures on applications, deliver policies, take inspection and reinspection photographs for property coverage, and to complete member reviews (which often lead to additional sales).[21] He networks in the community, and is active in his church and the local chamber of commerce. To generate new business, Mr. Ball also does promotion and advertising in the community by

---

[21] *Id*. ¶ 13. In a "member review," the agent visits with a farm bureau member to discuss and review the member's insurance needs.

sponsoring local school organizations such as cheerleaders, athletic teams, senior breakfast day, local golf tournaments, lions club, and the Horn Lake Alumni Scholarship Fund. *Id*. ¶ 14.

**Robert Carollo**

Robert Carollo has been an insurance agent with the Defendants since September 2014, operating out of the Grenada County office. Carollo Decl. ¶ 2. Mr. Carollo obtained his Financial Services Certified Professional (FSCP) designation in 2018 in order to learn more about financial products and better service his clients. None of the Defendants required him to become an FSCP. *Id.* ¶ 3.

Before he became an agent, Mr. Carollo was a salaried employee at another company. He chose to become an independent insurance agent to have greater control over, and flexibility with, his schedule and to spend more time with his family. *Id*. ¶¶ 5-6, 9. He was drawn to being an insurance agent because it allowed him to be self-employed. *Id*. ¶¶ 5, 13-14. As his own boss, he sets his own schedule and takes vacations and time off when he chooses. *Id*. Before heading into the office, he has breakfast at a local donut shop. *Id*. ¶ 13. Most days, he spends approximately 3-4 hours in the office. *Id.* ¶ 10. He typically goes to lunch every day, and spends his afternoons out meeting with clients and prospective clients, delivering policies, or conducting property inspections and taking photos of properties. *Id*. ¶¶ 10-11. The meetings and appointments that he conducts outside the office help him to maintain existing client relationships and to grow his business. *Id*. ¶ 13.

**Deborah Alford**

Deborah Alford has been an insurance agent for the Defendants in Hancock County for over 29 years. Alford Decl. ¶ 2. The three agents and the agency manager in Hancock County take turns being in the office four-and-a-half hours a day, several times a week. *Id*. ¶ 9. Although the agents share "floor duty" to ensure that there is an agent in the office at all times to

attend to telephone calls and walk-ins, she is otherwise free to set her schedule. *Id.* She uses her time in the office to schedule appointments with clients to take applications and conduct member reviews, which give her an opportunity to discuss a member's insurance needs and assess whether they might require additional or different coverage to suit their current needs. *Id.* ¶¶ 6, 9. Several times a week, she visits clients outside the office to deliver policies and to take pictures of properties for new business or renewals. *Id.* ¶ 5. She does not need permission from her agency manager to leave the office. *Id.* ¶ 9.

Before becoming an insurance agent, Ms. Alford was a realtor and was also contracted as an independent contractor. She chose to become an independently contracted insurance agent because she wanted to have the flexibility in her schedule that she has always enjoyed and that the agent position afforded. *Id.* ¶ 4. When her daughters were younger, she was able to pick them up from school in the afternoons and attend their after-school activities. Now that her daughters are grown, she enjoys being able to take time off to visit them and her grandchildren. *Id.* ¶ 10. No one questions when she takes a vacation or time off. *Id.* ¶ 11. She rarely works on weekends or after the office closes at 5:00 p.m., and very rarely works more than 40 hours per week. *Id.* ¶ 13.

### **Ray Ladner**

Ray Ladner has been an insurance agent for the Defendants for more than 37 years. Ladner Decl. ¶ 2. Mr. Ladner works out of the Harrison County office in Gulfport. *Id.* Mr. Ladner sells insurance for Mississippi Farm Bureau, SFB Life, Progressive Insurance Company, Foremost Insurance Company, and other companies available through the brokerage, such as TPI, Cabrillo Coastal, Johnson & Johnson, and through the Mississippi Windstorm Underwriting Association. *Id.* ¶ 3.

Mr. Ladner sets his own sales goals and knows what he needs to do to reach them.  In any given year, the amount of work he does is his own choice, and he enjoys the freedom and flexibility that the position affords him.  *Id*. ¶¶ 5, 9.  No one questions his schedule or has told him that he needs to work more.  *Id.*  ¶¶ 4, 9.

He shares a CSR with agency manager Lance Wedgeworth; they each pay half of the CSR's salary directly to her.  *Id*. ¶ 7.  Mr. Ladner still takes property inspection and reinspection photos himself, and enjoys time away from the office to socialize and connect with clients.  *Id*. ¶ 10.

**<u>Tiffanie Stout</u>**

Tiffanie Stout has been an insurance agent with the Defendants in Union County since July 2015.  Stout Decl. ¶ 2.  The reason she contracted to be an agent with the Defendants is because it enabled her to set her own hours and schedule and to spend more time with her family.  *Id*.  ¶¶ 4, 5, 9.  She is self-motivated and sets her own production and sales goals.  Her agency manager has never said anything to her about her hours or her sales.  *Id*. ¶ 9.

Ms. Stout is disciplined and is able to schedule appointments with her clients from 9:00 – 5:00 p.m., either in the office or outside the office.  *Id*.  ¶ 5.  Some days she leaves the office early to attend school events or attend her kids' basketball games or soccer matches.  *Id*.  She hardly ever works weekends or evenings, and rarely works 40 hours per week.  *Id*.  ¶ 6.  She takes vacations and time off when she wants to and does not need to ask her agency manager for permission.  *Id*. ¶ 10.

As independent contractors, the agents take deductions from their tax returns for the money they spend entertaining clients, marketing and advertising expenses, CSR salaries, gas, and mileage.  *See* Carollo Decl. ¶ 10; Alford Decl.  ¶14; Ladner Decl. ¶ 7; and Stout Decl. ¶ 11.

## **ARGUMENT**

Section 216(b) of the FLSA allows "one or more employees" to maintain an action for violation of the overtime provisions of the FLSA "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. 216(b). The FLSA, however, does not provide that individuals may send notice to a proposed class. In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the U.S. Supreme Court held "that district courts have discretion, *in appropriate cases*, to implement 29 U.S.C. § 216(b) … by facilitating notice to potential plaintiffs." *Id.* at 169 (emphasis added).[22] The Court did not define, and has never subsequently defined, the legal standard to determine when, in a particular case, notice would be "appropriate." *Id.* at 169.

Similarly, the Fifth Circuit has not determined the legal standard or any particular procedure for determining when notice would be appropriate under § 216(b) of the FLSA. *Mooney*, 54 F.3d at 1216. Plaintiffs argue that this Court should apply a "lenient standard" of review to their Certification Motion, requiring "nothing more than substantial allegations." Pls.' Brief at 5. But Plaintiffs offer no argument as to why this "two-stage" *Lusardi* approach makes sense here, and Plaintiffs make no effort to comply with the alternative procedure based on Rule 23. *See Mooney*, 54 F.3d at 1214 (citing *Shushan*). Because the Fifth Circuit has not endorsed the *Lusardi* approach, and because a one-step procedure consistent with Rule 23 is more efficient and appropriate in this case, the Court should deny the Certification Motion and postpone any reconsideration of certification until after discovery is complete.

---

[22] In a dissent, Justice Scalia commented: "Nothing in § 216(b) remotely confers the extraordinary authority for a court—either directly or by lending its judicial power to the efforts of a party's counsel—to *search out* potential claimants, ensure that they are accurately informed of the litigation, and inquire whether they would like to bring their claims before the court." 493 U.S. at 177 (emphasis in original) (Scalia, J., dissenting).

I.    **THE COURT SHOULD REJECT PLAINTIFFS' APPLICATION OF THE FIRST STAGE OF THE *LUSARDI* APPROACH AND INSTEAD APPLY RULE 23 TO ANY DECISION REGARDING CONDITIONAL CLASS CERTIFICATION**

   A.    **The Rules Enabling Act Requires Application of Rule 23 To Plaintiffs' Request To Proceed In A Representative Capacity**

The Rules Enabling Act, enacted in 1934, empowers the U.S. Supreme Court to promulgate rules of practice and procedure for U.S. District Courts.  28 U.S.C. § 2072(a).  Under the "abrogation clause" of the Act, when such rules take effect, they invalidate any preexisting laws in conflict with the rule in question.[23]  Long after Congress enacted § 216(b) of the FLSA in 1938, Rule 23 of the Federal Rules of Civil Procedure was revised in 1966.  Rule 23(a) states: "One or more members of a class *may sue* or be sued *as representative parties* on behalf of all members *only if*" certain requirements are met.  Those requirements include numerosity, commonality, typicality, and adequacy.[24]  On its face, Rule 23 applies to any action in which a named plaintiff is attempting to represent other parties, which is exactly what Plaintiffs are

---

[23] 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."); *Jackson v. Stinnett*, 102 F.3d 132, 134-35 (5th Cir. 1996); *United States v. Wilson*, 306 F.3d 231, 236 (5th Cir. 2002), *overruled on other grounds by U.S. v. Clay*, 408 F.3d 214 (5th Cir. 2005).

[24] Rule 23(a) provides:  "(a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

   (1)    the class is so numerous that joinder of all members is impracticable;

   (2)    there are questions of law or fact common to the class;

   (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   (4)    the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b)(3) contains additional requirements, including predominance, superiority, and manageability.

attempting to do here.[25]

Moreover, the Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. Rule 81 does not exempt FLSA actions from Rule 23; nor does anything in the text of § 216(b) do so. As Plaintiffs expressly acknowledge, they have filed their Motion for Certification "*as representatives* of all similarly-situated current and past employees of Defendants." Pls.' Brief at 1 (emphasis added). Rule 23 governs representative actions and supplies the legal standards to determine when a party may proceed in a representative capacity. To the extent not inconsistent with the "opt in" aspect of § 216(b), Rule 23 should be applied here.

**B. The Court Should Follow The Rule 23 Approach Outlined By The District Court In *Shushan***

In *Shushan v. University of Colorado at Boulder*, 132 F.R.D. 263 (D. Colo. 1990), the court undertook a comprehensive analysis of whether Rule 23 should be applied to a request for certification of a class under § 216(b). The court explained:

> While the "opt-in" feature of section 216 is manifestly "irreconcilable," with the "opt-out" feature of rule 23, **it does not necessarily follow that every other feature of rule 23 is similarly irreconcilable with section 216**. Cases holding that rule 23 is wholly inapplicable in ADEA actions are premised partly on this *non sequitur*, and that is part of the reason they do not seem entirely persuasive.

*Id.* at 266 (citations omitted, emphasis added). The *Shushan* court correctly concluded that the requirements of Rule 23 should be applied and satisfied before a class is certified under § 216(b):

---

[25] When Rule 23 was revised in 1966, it was changed from an "opt in" rule to an "opt out" rule. *See* Fed. R. Civ. P. 23, Advisory Committee Notes. The Advisory Committee Notes state that "[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended." Some courts have incorrectly cited this language as justification to conclude that the entirety of Rule 23 does not apply to FLSA actions. There is no justification for such a conclusion. The Advisory Committee Notes properly interpreted mean simply that the 1966 amendment of Rule 23 was not intended to change the "opt in" aspect of § 216(b).

> I cannot accept the extraordinary assertion that an aggrieved party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class. Before I conditionally determine the scope of the class, plaintiffs will need to satisfy me that there exists a definable, manageable class and that they are proper representatives of the class. They will, in other words, need to show that they satisfy the requirements of rule 23 or convince me that a particular requirement is inconsistent with 29 U.S.C.A. § 216(b) (West Supp. 1965). When that showing is made, I will consider the question of notice under the guidelines set forth in rules 23(c) and 23(d) and in *Hoffmann–La Roche, Inc. v. Sperling,* [493] U.S. [165], 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

*Id.* at 268. The reasoning of the Court in *Shushan* is sound and results in a more efficient and appropriate procedure than the *Lusardi* two-stage approach, which has no support in the Federal Rules of Civil Procedure. *See* King, *supra* note 8, at 1, 6, 14. This Court should apply the procedure of Rule 23 to the extent it is not inconsistent with § 216(b).[26]

### C. Application Of Rule 23 Is More Consistent With Due Process Considerations Than The Two-Step Procedure Represented By *Lusardi*

Sending notice of legal claims to a class of individuals who are crucial to the success of a company's business is a serious matter implicating due process concerns. *Cf. Izzio v. Century Golf Partners Mgmt., L.P.*, 670 F. App'x 348, 349 (5th Cir. 2016) ("Because of the due process concerns inherent in class-certification decisions, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites.") (quotations and citation omitted); *Castano*

---

[26] The *Lusardi* decision itself, a 1987 opinion by the District of New Jersey, does not contain any analysis or conclusion that Rule 23 should not be applied to class certification under the FLSA. Rather, *Lusardi* involved a motion to decertify a "conditional class," *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), which a prior district judge had conditionally certified <u>without</u> determining whether the class members were similarly situated: "This case presents a situation of a class which was conditionally certified *without a determination of whether its members are similarly situated.*" *Id.* at 361 (emphasis added). The *Lusardi* court decertified the class. *Lusardi* does not provide any precedent for rejecting or not applying the procedure of Rule 23 to the initial certification analysis.

*v. Am. Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996) ("class certification creates insurmountable pressure on defendants to settle, whereas individual trials would not"). The procedures for authorizing notice in an FLSA action should be equally serious and should accommodate a defendant's ability to take discovery and defend itself.[27] Here, Plaintiffs seek to send a notice to approximately 325 current and former agents suggesting that the Defendants have acted unlawfully. Such a notice threatens to harm the Defendants' goodwill, reputation, and relationships with its agents. *Cf. Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (notices and advertisements sent to a putative class prior to class certification "are surely causing serious and irreparable harm to [defendant]'s reputation and to its relationship with its employees"). Given the deleterious effect that hundreds of notices alleging unlawful conduct could have on Defendants' businesses, such a notice should not be sent absent an appropriately stringent legal standard to ensure that class treatment is appropriate. Rule 23 supplies an appropriate legal standard to ensure that alleged class members are in fact "similarly situated" before such a notice is sent.[28]

### D. Judicial Economy Would Not Be Served By Conditional Certification Under A Two-Stage Approach

Applying the "lenient" first stage of *Lusardi* to the present record, and ignoring evidence until a later decertification stage, would lead to a massive waste of resources and would thwart the objective of judicial economy. Under 29 U.S.C. § 216(b), a representative action is only

---

[27] 7AA Charles Alan Wright, et al., *Federal Practice & Procedure* § 1785.3 (3d ed. 2017) ("[C]ourts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis.").

[28] "I cannot see why the district courts should fail to utilize existing procedures, embodied in rule 23, which are designed to promote effective management, prevent potential abuse, and protect the rights of all parties." *Shushan*, 132 F.R.D. at 268.

permissible if the plaintiffs are "similarly situated" to the proposed class. *Blake*, 2013 WL 3753965, at *4 ("the ultimate purpose of the similarly situated inquiry is to determine whether hearing the cases together promotes judicial efficiency") (internal quotation marks omitted).

> The purpose behind collective actions is to allow for a streamlined and efficient adjudication of the claims of similarly situated plaintiffs. *See Hoffmann–LaRoche Inc.*, 493 U.S. at 170–171. Where the record before the court demonstrates that there is no common policy or scheme and instead individualized questions of fact predominate, the action is not an appropriate one for certification. Furthermore, the Court need not certify the action and facilitate notice where, based on the same record available to it presently, it would inevitably decertify the action in a month's time.

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011) (citing *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)). There would be no judicial efficiency in inviting approximately 325 non-parties to join in this lawsuit and completing massive, expensive discovery, only to dismiss everyone upon decertification in a later "second- stage" proceeding. As the court explained in *Basco v. Wal-Mart Stores*:

> To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

2004 WL 1497709, at *5 (E.D. La. July 2, 2004).

Here, applying an artificially lenient standard, which does not require evidence or involve a factual determination that class members are "similarly situated," could result in sending a notice to hundreds of persons subject to FLSA exemptions and individualized defenses, causing an enormous waste of party and judicial resources.

### E. The Certification Motion Should Be Denied Because Plaintiffs Have Failed To Meet Their Burden Under Rule 23

For the reasons discussed above, the Court should apply the principles set forth in Rule 23 to Plaintiffs' Motion. Under Rule 23, Plaintiffs have the burden of proving that the requirements of Rule 23(a) and (b) are satisfied. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269 (5th Cir. 2007), *abrogated on other grounds by Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011). To the extent there is any doubt as to whether the Plaintiffs have satisfied the requirements of Rule 23, certification should be denied. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321-22 (3d Cir. 2008); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217-18 (10th Cir. 2013). Because the Plaintiffs did not even attempt to meet the requirements of Rule 23 here, certification should be denied. *Cf. H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (plaintiffs failed the *Shushan* test where they "completely failed to present a factual showing on" Rule 23(a)'s factors); *Lentz v. Spanky's Rest. III, Inc.*, 491 F. Supp. 2d 663, 670 (N.D. Tex. 2007) (similar).

## II. REGARDLESS OF THE PROCEDURE USED, CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT "SIMILARLY SITUATED" TO THE PROPOSED CLASS

Plaintiffs seek the Court's authorization to send a notice inviting approximately 325 current and former agents to join in this action. Warren Decl. ¶ 5. But the named Plaintiffs are only entitled to represent opt-in plaintiffs if they are "similarly situated" and their claims can be tried together in a collective action. "Courts have ruled that where FLSA claims require significant individual determinations and considerations, they are inappropriate for conditional certification under section 216(b)." *Purdham*, 629 F. Supp. 2d at 550 (quoting *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *2 (D. Nev. 2006)). Indeed, "the need for separate mini-trials

to resolve each individual's claim ... is the antithesis of collective action treatment and would overwhelm the judicial system and eliminate any judicial efficiency that might be gained through a collective approach." *Hinojos*, 2006 WL 3712944, at *3 (denying motion for court ordered notice and concluding: "The Court does not believe that this action would be manageable at trial because of the need for individualized determinations to resolve the claims of each plaintiff.").

A. **The Presence Of FLSA Exemption Defenses Makes Certification Untenable**

Where the Plaintiffs and class members are subject to FLSA exemptions that depend upon individual facts, collective treatment is not appropriate. *Odem v. Centex Homes*, 2010 WL 424216, at *1 (N.D. Tex. Feb. 2010) (case unmanageable and certification inappropriate because fact-finder would have to, among other things, individually determine whether plaintiffs and opt-ins were exempt from the FLSA during part of their employments); *Harris v. FFE Transp. Servs., Inc.*, 2006 WL 1994586, at *4 (N.D. Tex. May 15, 2006) (denying conditional certification and explaining: "Most significant is the fact that some of the class members challenge their classification as exempt, while other plaintiffs are already classified as non-exempt and would appear to allege that their hours were not properly recorded. The different classifications and varying job duties would require Defendants to present a highly individualized defense for each plaintiff's claims."); *Lipnicki*, 2014 WL 5620603, at *5 (decertifying case: "Plaintiffs' testimony regarding what actually occurred 'on the ground' varies significantly with respect to considerations relevant to the outside sales determination. These disparities convince the Court that all of the opt-ins are not similarly situated."); *Blake*, 2013 WL 3753965, at *11, 12 (denying motion for conditional certification and noting, "if [the class] definition includes both exempt and nonexempt employees, then the members of the putative class cannot be similarly situated"); *Pfohl v. Farmers Ins. Grp.*, 2004 WL 554834, at *9

(C.D. Cal. Mar. 1, 2004) (an "individualized inquiry to determine whether [plaintiffs'] varying duties meet the administrative exemption" precluded a collective action).[29]

An employee qualifies for the outside-sales exemption if (i) his "primary duty" is "making sales" and (ii) the employee is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).[30] The Fifth Circuit has explained:

> The logic of the exemption is that "such a salesman, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates." An outside salesman's extra compensation comes in the form of commissions, not overtime, and because most of the salesman's work is performed away from the employer's place of business, the employer often has no way of knowing how many hours an outside salesman works.

*Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941)). In addition to the outside sales exemption, agents in Plaintiffs' proposed class may be covered by the administrative

---

[29] *See also Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (denying motion to proceed as a collective action and stating, "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities") (internal quotation marks and citation omitted); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1103 (D. Kan. 2012) (granting motion for decertification and stating: "Although Plaintiffs do not specifically address whether they are similarly situated with respect to the administrative exemption, the Court reaches the same conclusion as above. Like the executive exemption, the focus of whether an employee is properly classified under the administrative exemption requires an individualized inquiry into a Plaintiff's day-to-day job responsibilities and tasks.").

[30] "Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work." 29 CF.R. § 541.503(a). And "preliminary steps toward the end goal" of sales also fall within the definition of sales activities for purposes of the exemption. *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 398 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012).

exemption,[31] or the highly compensated exemption if they earn in excess of $100,000 per year. 29 C.F.R. § 541.601.[32]

In this case, the record shows that several of the class members are regularly engaged in sales activity outside the office, and these class members are likely to be exempt as outside salesmen.[33] Those that do not regularly engage in outside sales activity are likely to be covered by the administrative exemption. Where, as here, credible exemption issues exist, there will be significant individualized disputes and fact-finding necessary to adjudicate the claims and defenses relating to each Plaintiff and proposed class member. Any trial of this action would devolve into a series of mini-trials, rendering it an appropriate case for collective treatment. *Morisky*, 111 F. Supp. 2d at 499 ("[T]he Court finds that litigating this case as a collective action would be anything but efficient. The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis."). "[W]here a trial would require individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate. The facts here

---

[31] DOL Wage Hour Op. Ltr. No. FLSA2009-28, *supra* note 10; *Hogan*, 361 F.3d at 627-28 (finding that agent met administrative exemption under the FLSA); *Wilshin*, 212 F. Supp. 2d at 1379 (employed agent met administrative exemption). To the extent the administrative exemption requires a minimum annual compensation of $23,660 ($455 per week x 52 weeks), Defendants contend that based upon the size of their books of business and amount of renewal commissions, all or virtually all of the agents in the proposed class were effectively guaranteed to receive compensation above this level.

[32] Hamill Decl. ¶ 6 (29% of agents under contract for all of 2017 earned over $100,000, not including income from SFB Life).

[33] *See, e.g.*, Ball Decl. ¶¶ 11-14; Carollo Decl. ¶¶ 11-13, 15. Some of the named and opt-in Plaintiffs likewise engaged in significant sales activities outside of the office. *See* Declaration of Michelle Howard ("Howard Decl.") ¶ 5, copy attached to Response as Exhibit H (stating that "throughout the day," Plaintiff Jason Normal "would be in and out of the office" meeting with customers, taking pictures of properties for new sales and reinspections, dropping off applications, and meeting with underwriters).

present just such a case." *Purdham*, 629 F. Supp. 2d at 551 (quotations and citation omitted). The Court should allow discovery to be completed regarding these exemptions before notice is sent to an inappropriate class that later needs to be decertified. The Certification Motion should be denied.

**B.    The Court Should Deny Certification Because The Independent Contractor Issues In This Case Create Individualized Issues That Are Inappropriate For Collective Action Treatment**

Certification should also be denied because the determination of whether an individual is an independent contractor or an employee creates individualized issues that are inappropriate for collective resolution. "[A] number of courts have determined that whether an individual is an independent contractor or an employee is not appropriate for determination on a class-wide basis." *Demauro v. Limo, Inc.*, 2011 WL 9191, at *3-4 (M.D. Fla. Jan. 3, 2011). Indeed, a defendant's decision to classify certain employees as exempt does not, on its own, demonstrate that Plaintiffs are similarly situated or provide a basis for proceeding collectively. *Lagos v. Cogent Commc'ns*, 2014 WL 12776418, at *9 (S.D. Tex. Mar. 12, 2014); *Palacios v. Boehringer Ingelheim Pharms., Inc.*, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011). Rather, the test for whether an individual is an independent contractor or employee is fact intensive and individualized. *Demauro*, 2011 WL 9191, at *3-4; *see also Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (noting that the independent contractor/employee classification issue is "very fact intensive").

In applying the test, courts "must focus on the economic reality of the nature of the working relationship, requiring a consideration of all the circumstances of the work activity, not just one isolated factor." *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009). "Accordingly, the court must take into consideration the actual history of the parties' relationship," *id.*, and "make a fact-intensive, individual

determination as to the nature of each potential claimant's employment relationship with" the Defendants. *Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888, at *2-3 (N.D. Ill. Feb. 8, 2000). In *Griffith v. Fordham Financial Management, Inc.*, 2016 WL 354895, at *3-4 (S.D.N.Y. Jan. 28, 2016), for example, the court had to make "individualized inquiries into each [p]laintiff's work schedule, compensation, and the level of control [the defendant] exerted" over each plaintiff. The same will be required here.

The approximately 325 current and former agents in Plaintiffs' proposed class operated out of 113 different offices, in different counties all over the State, under 72 different agency managers, and three to four different district sales managers. When they were under contract, the 13 Plaintiffs operated out of 11 offices. Hamill Decl. ¶ 5. Many agents exert considerable autonomy and independence with regard to their schedules and in deciding how to best market and sell insurance and service their clients.[34] To determine whether the Plaintiffs or class members in this action were independent contractors or employees, the Court will have to

---

[34] *See, e.g.*, Ladner Decl. ¶ 5 ("I like controlling my own destiny and this job lets me do that. … No one has ever set my goals for me or told me what to do, when to do it, or how to do my job. I enjoy the freedom this job provides me."), ¶ 9 ("My time is flexible, so I set my own schedule"); Alford Decl. ¶ 8 ("I have always been able to set my own schedule."), ¶ 9 ("Other than the floor duty time that I promise my fellow agents I will keep, I do not need to be in the office and I am free to come and go from the office as I want."); Stout Decl. ¶ 4 ("The reason I contracted to become an insurance agent with Mississippi Farm Bureau and Southern Farm Bureau Life was to be able to set my own hours and schedule. As [an] independent contractor with Farm Bureau, I can do that."); Ball Decl. ¶ 4 ("I was a high school football coach for 10 years .… I decided to make the change in my career because I wanted to work for myself and have control over my own success. As [an] independent contractor with Farm Bureau, I am able to do that (and I have been able to do that for 35 years."), ¶ 5 ("My agency manager … has no rules about when I should be in the office or what kind of schedule I should work."), ¶ 6 ("I work for myself. Every agent I've met does things their own different way .…"); Carollo Decl. ¶ 4 ("The agency manager for Grenada County … does not have any rules about when I (or the other agents in Grenada) should be in the office or what kind of schedule I should work."), ¶ 5 ("I consider myself to be self-employed."), ¶ 6 ("I set my own schedule. I am free to come and go from the office as I see fit."), ¶ 9 ("I am completely in charge of my schedule. … I decide when to work, where to work, and how to work.").

consider each agent's work habits, work schedule, relationship with the Defendants, how they treated themselves for tax purposes, other economic activities, and their investment in their own insurance businesses.[35]  Because "each individual who may seek to join this case [must] be examined separately in order to determine whether such individual is an employee or an independent contractor," and such individualized inquires "contravene the basic theory of judicial economy upon which the certification of collective actions is based," collective action treatment is inappropriate.  *Demauro*, 2011 WL 9191, at \*3-4.[36]

### C.   The Plaintiffs Have Failed To Provide Any Credible Evidence That They Are "Similarly Situated" To Other Agents In Their Proposed Class

Aside from problems with individual factual issues and exemption defenses, the Certification Motion also suffers from a complete failure of proof, even under a "lenient" standard.  Each of the Plaintiffs submitted a virtually identical affidavit with the same 18 paragraphs.  Courts in the Fifth Circuit and elsewhere have concluded that conclusory, cookie-cutter affidavits are insufficient to satisfy even Plaintiffs' lenient burden under the first stage of

---

[35] For example, some of the named and opt-in Plaintiffs engaged in income-generating activities other than simply selling and servicing insurance for the Defendants.  *See, e.g.*, Declaration of Barbara Butler ("Butler Decl.") ¶ 5 (discussing Plaintiff Chris Carney's search for other business opportunities and home remodeling activities), copy attached to Response as Exhibit I; Declaration of Ginger Cruz ("Cruz Decl.") ¶ 4 (discussing opt-in Plaintiff Keegan Bumpous's baseball coaching business), copy attached to Response as Exhibit J.  The record evidence also suggests that Plaintiffs had notable flexibility in their work schedules.  *See* Howard Decl. ¶ 5; Butler Decl. ¶¶ 3, 4, 6, 7; Cruz Decl. ¶¶ 3-4.  These kinds of facts will need to be discovered and examined individually for each Plaintiff and opt-in to determine whether they were independent contractors, as Defendants maintain, or employees under applicable law.

[36] *See also Armstrong v. Wheeels Assured Delivery Sys., Inc.*, 2016 WL 1270208, at \*6 (S.D. Ind. Mar. 30, 2016) (denying motion for conditional certification where differences among allegedly misclassified plaintiffs with regard to routes, hours, mileage, and levels of interaction with the employer required highly individualized and fact-intensive inquiry); *Carrera v. UPS Supply Chain Sols., Inc.*, 2012 WL 12860750, at \*9-10 (S.D. Fla. Sept. 14, 2012) (granting decertification where there were enough differences between each plaintiff that the court would be required to conduct an individualized analysis as to each person's misclassification claim).

the *Lusardi* approach. *See Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (stating that affidavits that are virtually identical, and contain primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge do not support conditional certification). In *Stiles v. FFE Transportation Services, Inc.*, 2010 WL 935469, at *3 (N.D. Tex. Mar. 15, 2010), for instance, the court observed that "[e]ach Plaintiff's declaration is close to identical in substance and consists primarily of conclusory allegations unsupported by any facts." The vague and conclusory statements were insufficient evidence that plaintiffs were similarly situated and did not justify conditional certification. *Id.* Plaintiffs' affidavits here are equally insufficient.

"[D]eclarations filed in support of a motion for conditional certification must be based on personal knowledge." *Boyd v. Alutiiq Global Solutions, LLC*, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011). Each Plaintiff concludes, however, that "[t]he other Mississippi Farm Bureau insurance agents had the same or substantially similar working and pay conditions." *See, e.g.*, Docket No. 63-5 (Miley Affidavit) ¶ 5. But "[t]he affidavits contain nothing to establish that the [P]laintiffs have personal knowledge of those matters as they pertain to any other" agent. *Songer*, 569 F. Supp. 2d at 707. As such, they are insufficient to establish that Plaintiffs are similarly situated to any other agent. *See id.* Likewise, each Plaintiff concludes on the basis of nondescript "discussions with other Mississippi Farm Bureau agents that most, if not all, … agents typically and regularly worked overtime hours …." *See, e.g.*, Docket No. 63-9 (Saunders Affidavit) ¶ 16. But "Plaintiffs do not identify to whom they spoke, when those conversations occurred, where they occurred, or what specifically was discussed that would lead them to conclude that" most or all agents worked overtime. *Boyd*, 2011 WL 3511085, at *6. Thus, "Plaintiffs' factual showing is so lacking in foundation that it fails to meet Plaintiffs' modest burden for conditional certification." *Id.*

-27-

## **<u>CONCLUSION</u>**

For all of the reasons set forth above, the Court should enter an order denying Plaintiffs'

Certification Motion.

Dated:  November 20, 2018.

Respectfully submitted,

 /s/ Markham R. Leventhal
Markham R. Leventhal (MSB #101091)
mleventhal@carltonfields.com

*Attorneys for Defendant Southern Farm*
*Bureau Life Insurance Company*

OF COUNSEL:

CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC  20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

**<u>CERTIFICATE OF SERVICE</u>**

I, Markham R. Leventhal, attorney for Defendant Southern Farm Bureau Life Insurance Company, do hereby certify that I have this day filed the foregoing Defendant Southern Farm Bureau Life Insurance Company's Memorandum Brief in Support of its Response to Plaintiffs' Motion for Conditional Certification of Collective Action and for Court-Approved Notice, with the Clerk of Court via the Court's ECF System, which caused a copy to be served upon all counsel of record.

SO CERTIFIED, this the 20th day of November, 2018.

         /s/ Markham R. Leventhal
         Markham R. Leventhal (MSB #101091)
         mleventhal@carltonfields.com