IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MEGAN BRITT, BRETT HAWKINS,
STEVE HARBOUR, JASON NORMAN,
BRIAN MILEY, CLINT BUCKLEY, and
JASON BAKER, individually and on behalf
of others similarly situated                                            PLAINTIFFS

VS.                                CIVIL ACTION NO. 1:18-CV-38-GHD-DAS

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY, SOUTHERN
FARM BUREAU LIFE INSURANCE
COMPANY, and SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY                      DEFENDANTS

**OPINION DENYING DEFENDANTS' MOTION FOR DECERTIFICATION
AND PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Presently before the Court is the Defendants' motion seeking to have the Court decertify this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* In addition, the parties have filed several competing cross-motions for summary judgment. Upon due consideration and for the reasons set forth below, the Court finds that the Defendants' motion to decertify should be denied. This matter shall proceed as a collective action with the present class of twelve plaintiffs. The Court further finds that the parties' competing cross-motions for summary judgment should be denied.

**I.     Factual and Procedural Background**

The Plaintiffs are twelve current and former insurance agents who sold insurance policies for the Defendants in Mississippi. While the Defendants classified the Plaintiffs as independent contractors, the Plaintiffs contend that the Defendants exerted a sufficient

level of control over them to make them employees, that they all worked in excess of 40 hours a week, and that Defendants did not pay them overtime, in violation of the FLSA.

The Court conditionally certified this matter as a collective action in the early stages of this litigation [108, 109]. The parties then engaged in extensive discovery and filed the presently pending motions. The motions include the Defendants' motion to decertify [390] and the parties' various competing cross-motions for summary judgment [403, 410, 412, 415, 417, 419, 421].

## II. Standard of Review

### A. Collective Action Standard

The FLSA requires that employers provide overtime pay to employees who work more than 40 hours a week unless the statute exempts those employees from FLSA coverage as independent contractors or pursuant to an exemption. 29 U.S.C § 207(a). Section 216(b) of the Act provides that an employee not paid such wages may bring an action for himself and any "other employees *similarly situated*" who join the case by providing written consent. 29 U.S.C. § 216(b) (emphasis added). In the case *sub judice*, a total of twelve plaintiffs have joined this action.

The United States Supreme Court has held that FLSA plaintiffs qualify as "similarly situated" when they demonstrate that they raise claims capable of "efficient resolution in one proceeding of *common issues of law and fact arising from the same alleged*" misconduct. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (emph. added); *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). Accordingly, regarding the Defendants' motion to decertify, the Court must decide if the twelve Plaintiffs are sufficiently similarly situated to permit this matter to proceed to trial

2

as a collective action or if the Court should try each Plaintiff's case individually in separate trials.

Although the Plaintiffs have the burden "to prove that the individual class members are similarly situated," *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018), the similarly situated determination is not "an opportunity for the court to assess the merits of [any] claim by deciding factual disputes or making credibility determinations," *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010). Instead, "[a]fter considering all available evidence," the Court must exercise its "broad, litigation-management discretion" to determine whether "the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated' ... or at least that Plaintiffs have not met their burden of establishing similarity." *Swales*, 985 F.3d at 443.

As the Fifth Circuit held in *Swales*, factors to be considered regarding whether the Plaintiffs are similarly situated include: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to *each* plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 437 (emphasis added). These factors overlap considerably and "are not mutually exclusive." *Snively*, 314 F. Supp. 3d at 739 (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008)). Further, as recognized in *Swales*, although "trial courts do not possess 'unbridled discretion' in overseeing collective actions . . . ," they do possess broad discretion related to collective action matters, including when applying the legal standard for determining whether to proceed as a collective action because the group is similarly situated. 985 F.3d at 436 (quoting *Hoffmann-La Roche*, 493 U.S. at 174).

3

"If the Court determines the plaintiffs are similarly situated, the collective action proceeds." *Snively*, 314 F. Supp. 3d at 738-39. But if the Plaintiffs fail to carry their burden to show "that the individual class members are similarly situated," the Court will find that they are not similarly situated, dismiss them "without prejudice to bringing their own actions," and permit the original plaintiffs to "proceed with their individual claims." *Id.* at 739.

### B.    Summary Judgment Standard

As for the parties' competing motions for summary judgment, the Court grants summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for the motion and identifying those portions of the record the moving party believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at

4

324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

#### A. Defendants' Motion to Decertify

As noted above, the Plaintiffs bear the burden of establishing that they are sufficiently similarly situated to permit collective certification. *Swales*, 985 F.3d at 443. While this standard does not mean that the class members must be identically situated, it does mean that the Plaintiff must show "a demonstrated similarity" among the purported class members, as well as a "factual nexus" that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries. *Id.* In general, as noted above, in order to determine if purported class members are sufficiently similarly situated, courts consider (1) the factual and employment settings of the purported class members; (2) the various defenses available to the defendant and if any defenses are individualized rather than applying to the class as a whole; and (3) fairness and procedural considerations. *Swales*, 985 F.3d at 437.

5

The Court notes that, from the statutory text, "similarly situated," as required for pursuit of an FLSA collective action, clearly differs from "identically situated." And "courts are adamant" that plaintiffs need not establish identical situations to carry their burden to show that they are "similarly situated." *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (citing cases). Instead, the pertinent inquiry is whether the plaintiffs have "demonstrated similarity among the individual situations." *Id.* They may do that by showing "some factual nexus which binds" them as alleged victims of a particular policy or practice. *Id.* Thus, "hearing the cases together furthers the purposes of [the statute], is fair to both parties, and does not result in an unmanageable trial." *Vanzzini*, 995 F. Supp. 2d at 720.

To that end, even if there are "numerous differences between individual plaintiffs," such differences will not preclude a collective action unless they are material to the ultimate issues before the trial court. *Clark v. Cenene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014). Undoubtedly, when "one zooms in close enough on anything, differences will abound;" but courts must consider the claims asserted "at a higher level of abstraction." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (per curiam). In other words, while courts take "care in evaluating distinctions among employees," they must also recognize that, for an identified distinction to be material, it "must make a difference relevant to the legal issues presented." *Id.*

As for the three *Swales* factors, with respect to the first factor, as the Southern District of Texas has recognized, "the question is not whether Plaintiffs all have the same exact work day," but rather "whether they are all subjected to a common policy, plan, or practice . . ." *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19

6

(S.D. Tex. June 12, 2017) (citing *Vanzzini*, 995 F. Supp. 2d at 722-23). Variations of a particular workday or variations between employees "go to the magnitude of the effect of the common decision on individual [employees] rather than undermining the fact that it was a common policy, plan, or practice that affected them all." *Id.* Moreover, "[v]ariations in the quantity of time lost as uncompensated goes to damages, not liability." *Id.* When plaintiffs' "common issues predominate over individual damage calculations," class certification is proper, and the plaintiffs may proceed in a collective action. *See id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452-53 (2016) (finding variations in individual damages do not prevent certification)).

In the case *sub judice*, the Court finds that the Plaintiffs have met their burden and that they are sufficiently similarly situated to permit this action to proceed as a collective action. All twelve of the Plaintiffs had the same identical contractual arrangement with the Defendants [423-19, 20], were paid according to the same identical pay schedule, and sold the same insurance policies to the Defendants' customers. The Defendants decided to which office each Plaintiff was assigned and the Plaintiffs were not allowed to sell policies that were not approved by the Defendants and all sales had to be approved by the Defendants' managers [423-4, at 147]. The Defendants set sales targets for the Plaintiffs and required the Plaintiffs to be physically present in the office on specified days [423-13, at 55-56]. The Court finds that these similarities meet the standard of demonstrating that the Plaintiffs are in fact alleging that a common policy, plan, or practice affected them all similarly. The Court finds that this showing is sufficient to permit this action to proceed collectively.

While the Defendants point to some factual dissimilarities between the Plaintiffs,

7

the Court finds the similarities of the Plaintiffs' factual and employment settings support proceeding as a collective action, and that the dissimilarities that the Defendants allege do not overcome the Plaintiffs' evidence that demonstrate that a common policy, plan, or practice affected them all. As noted above, the Defendants compensated all twelve of the Plaintiffs under a uniform policy or practice, classified all of the Plaintiffs as independent contractors and thus ineligible for overtime, and controlled their work in similar ways. All twelve of the Plaintiffs share a highly similar employment setting, are all insurance agents who signed the same contractual agreement regarding their work for the Defendants, perform the same or essentially the same work under similar supervisors, and are subject to the same pay provisions and policies or practices. The Court therefore finds that the first *Swales* factor weighs in favor of the Plaintiffs.

As for the second *Swales* factor, the Defendants' defenses, the Defendants argue that because they intend to argue certain defenses as to fewer than all twelve Plaintiffs uniformly, the Plaintiffs are not similarly situated. The Court finds, however, that the Defendants' essential, overarching, defense is that the time the Plaintiffs have claimed as overtime is simply not compensable because all of the Plaintiffs, who were all classified as "agents," were independent contractors. Nevertheless, the Defendants argue that the Plaintiffs are not similarly situated because the Defendants do not intend to assert all of their defenses uniformly to all twelve Plaintiffs. The Court notes, however, that the Defendants assert some defenses against all twelve Plaintiffs, another defense against seven of the twelve Plaintiffs, and do not assert any defenses against fewer than five of the Plaintiffs.

For these reasons, the Court finds the asserted individual defenses to be sufficiently

8

globally applicable across Plaintiffs. And to the extent there are individual defenses that apply to specific groups of Plaintiffs, such defenses carry less weight than the global defenses, including the defenses that the Plaintiffs are independent contractors and the retail exemption defense, both of which apply to all twelve Plaintiffs. Even if the Defendants must pose an inquiry to each of the twelve Plaintiffs regarding one or more defenses, the Court does not see how doing so "in one collective trial is any less difficult" than posing the same inquiry in separate trials. *Snively*, 314 F. Supp. 3d at 742.

Finally, the Court considers matters of fairness and procedure – the third *Swales* factor. Regarding these matters, courts consider "the primary objectives" of FLSA collective actions – "(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively*, 314 F. Supp. 3d at 743 (citation omitted). Another pertinent consideration is whether the Court "can coherently manage the class in a manner that will not prejudice any party." *Id.* (quoting *Mahoney v. Farmers Ins. Exch.*, No. 4:09-CV-2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011)).

The Court finds that the size of the class, at twelve plaintiffs, is not unwieldy and is smaller than many other collective actions that proceed to trial as a class. The Court is also confident that it can manage the class in a manner to avoid prejudice to either party. Further, the Court finds that "to decertify the class at this time would require refiling, joinder or consolidation, and additional pleadings," all of which "would be inefficient and serve no useful purpose," at this late point in the litigation. See, e.g., *Hernandez v. Morning Call Coffee Stand, Inc.*, No. CV 17-2613, 2018 WL 3391593, at *3 (E.D. La. July 12,

9

2018).

Furthermore, it is within the Court's discretion to permit this collective action to proceed while also permitting "individualized evidence through testimony to the jury or deposition excerpts to the court." *Roussell*, 441 F. App'x at 227. In *Roussell*, which involved fifty-five plaintiffs, the Fifth Circuit found that fifty-five "separate trials would not have been justifiable under [Fifth Circuit] FLSA caselaw" because "collective actions are intended 'to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.'" *Id.* (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008)). Accordingly, it held that that "suit validly proceeded as a collective action." *Id.* The Court finds that the same applies to present class of twelve, approximately one-fifth the size of the class in *Roussell*.

In sum, the Court finds that the Plaintiffs are sufficiently similarly situated so that this matter can appropriately be tried on a collective basis. The Court notes that this collective action now contains only twelve members in total—a far cry from collective actions containing dozens or hundreds of members, which would present larger procedural concerns. As such, there is less of a risk that the case will "quickly devolve into a cacophony of individual actions" and decertification at this juncture would be more unfair to the Plaintiffs than any potential unfairness to the Defendants should the Plaintiffs be allowed to continue their pursuit of this case as a collective action. *Swales*, 985 F.3d at 442. Further, the Court finds it more efficient for all parties and the Court to permit this action to continue as a collective action. Considering the evidence placed before the Court that addresses factual and employment settings, the Defendants' apparent defenses, and

10

procedural and fairness considerations, the Court finds that Plaintiffs have carried their burden of demonstrating that they are sufficiently similarly situated and that this matter may be therefore proceed as a collective action. The Defendants' motion to decertify shall therefore be denied.

### B. Motions for Summary Judgment

The parties have filed competing motions for summary judgment as to both the primary issue in this case – whether the Plaintiffs were employees who worked unpaid overtime or were independent contractors – and as to several of the Defendants' defenses – the outside sales, retail, "white collar," and highly compensated exemptions. Upon due consideration and as further explained below, the Court finds that these competing motions should be denied. Genuine issues of material fact exist as to the viability of the Plaintiffs' claims and neither the Plaintiffs nor the Defendants are entitled to judgment as a matter of law at this juncture regarding the Defendants' potential liability or the validity of any defenses raised by the Defendants.

First, as to the parties' competing motions regarding the Plaintiffs' status as employees or independent contractors, as well as the Defendant Southern Farm Bureau Casualty Insurance Company (SFBCIC)'s motion for summary judgment and the Plaintiffs' competing motion, the Court finds that genuine issues of material fact regarding both whether an employer-employee relationship existed between the Plaintiffs and SFBCIC, and whether the Plaintiffs were independent contractors or employees vis-à-vis the three Defendants.

At trial, the Plaintiffs must prove (1) that there existed an employer-employee relationship between the Plaintiffs and the Defendants during the unpaid overtime periods

11

claimed; (2) that the Plaintiffs engaged in activities within the coverage of the FLSA; (3) that the Defendants violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due, if any. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (internal quotation and citation omitted). Under the FLSA, to determine if a worker qualifies as an employee rather than an independent contractor, the Fifth Circuit focuses on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself, in which case the worker may be deemed an independent contractor and outside the FLSA's purview. *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). As such, in making this determination, courts within the Fifth Circuit "consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and 6) whether the work performed is an "integral part" of the business. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020).

Here, both the Plaintiffs and Defendants submit voluminous evidence and authorities in support of their respective positions – the Plaintiffs submit evidence and authority supportive of their position that the Defendants exercised control over the Plaintiffs, not only as to their work schedules, compensation, and work conditions, but also as to limits and restrictions on their sales and the manner in which they conducted those sales, and that this control was sufficient to render the Plaintiffs employees under the FLSA. See, e.g., *Ferguson v. Texas Farm Bureau*, No. 6:17-CV-111, 2021 WL 2349340

12

(W.D. Tex. May 19, 2021) (holding that former Farm Bureau agents who had been promoted to sales leaders were employees under the FLSA); *Hopkins*, 545 F.3d 338, 343 (5th Cir. 2008). The Defendants, on their part, likewise submit evidence and authority supportive of their position that they did not exert control over the Plaintiffs to the degree required to render the Plaintiffs employees. The Court, after reviewing all of the evidence and authority submitted by both sides, finds that genuine issues of material fact exist and that neither side is entitled to judgment as a matter of law regarding the status of the Plaintiffs under the FLSA as employees or independent contractors. See, e.g., *McKee v. Brimmer*, 39 F.3d 94, 97 (5th Cir. 1994) (disputes regarding whether plaintiffs are employees or independent contractors are usually questions of fact for the jury). Accordingly, the parties competing motions for summary judgment shall be denied.

Next, the parties have filed competing motions for summary judgment as to the defenses the Defendants may pursue at trial – the outside sales exemption, the retail exemption, the "white collar" exemptions, and the highly compensated exemptions. As explained below, the Court finds that genuine issues of material fact exist regarding each of these defenses that preclude either the Plaintiffs or the Defendants from being entitled at the present juncture to judgment as a matter of law.

First, the FLSA exempts individuals employed in the capacity of "outside" salesmen. The parties have filed competing motions for summary judgment regarding this defense [403, 417]. An employee qualifies as an outside salesman if (1) his "primary duty" is "making sales" or "obtaining orders or contracts for services" and (2) he is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. §541.500(a). This exemption exists because outside-sales

13

work is hard "to standardize to any time frame," makes "compliance with the overtime provisions difficult," and makes it "challenging, to say the least," for employers to compensate "for overtime going forward without significantly changing the nature of that position." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012).

The Plaintiffs argue, with supporting authority, that because the Defendants retained discretion to approve any solicitations or sales made by the Plaintiffs, that the Plaintiffs were not "making sales" under the FLSA and thus are not subject to this defense. See *Ferguson*, 2021 WL 2349340 (W.D. Tex. May 19, 2021) (holding that the subject plaintiffs were engaged in solicitation and not sales because Farm Bureau approval was required to constitute a sale); *Hurt v. Commerce Energy, Inc.*, 973 F.3d 509 (6th Cir. 2020) (door-to-door sales personnel whose solicitations required further approval, and who had signed independent contractor agreements, were not engaged in sales under the outside sales exemption because employer retained discretion to reject or approve any sales). The Defendants, on the other hand, cite competing authority that the Plaintiffs' solicitations were sufficient to qualify as "sales" under the exemption and thus the exemption applies. See, e.g., *Flood v. Just Energy Mktg Corp.*, 904 F.3d 219, 229 (2nd Cir. 2018).

Given the competing evidence and authorities that the parties have submitted regarding the nature of the Plaintiffs' duties and whether those duties qualify for exemption under this defense, the Court finds that genuine issues of material exist as to this defense and that neither side is entitled to judgment as a matter of law. The parties' competing motions for summary judgment as to this defense shall therefore be denied.

Next, the parties have filed competing summary judgment motions as to the FLSA's "retail" exemption and its applicability to this case [410, 415]. 29 U.S.C. §207(i) of the

14

FLSA is commonly referred to as the retail or service establishment exemption. Section 7(i) of the FLSA exempts from the Act's overtime requirements certain employees of retail or service establishments who are paid on a commission basis. For the Section 7(i) exemption to apply, three statutory requirements must be met: (1) the employee must be employed by a retail or service establishment; (2) the employee's regular rate of pay must be more than 1.5 times the applicable minimum wage; and (3) more than half of the employee's compensation for a representative period (not less than 1 month) must represent commissions on good or services. *Leal v. Magic Touch Up, Inc.*, 855 Fed. App'x 924, 928 (5th Cir. 2021). The parties have submitted competing evidence regarding what the Court deems material facts regarding the elements the defense – including whether the Defendants qualify as "retail or service" establishments. As such, the Court finds that genuine issues of material fact exist, neither side is entitled to judgment as a matter of law at this juncture, and the parties' competing motions for summary judgment regarding this defense should be denied.

Finally, the parties have filed competing motions for summary judgment regarding the FLSA's "white collar" exemptions – the administrative, executive, and highly compensated exemptions. For these exemptions to apply, one of the elements the Defendants must show is that the Plaintiffs were paid, at least in part, on either a fee or salary basis. 29 C.F.R. §§541.100, 541.200, 541.300, 541.601. Here, the Plaintiffs have proffered evidence that they were compensated on a pure commission basis, and not a fee or salary basis, and that the white collar exemptions therefore do not apply in this case. In contrast, the Defendants argue that the method by which the Plaintiffs were compensated qualifies as a salary basis under the FLSA. The Court has reviewed the parties' evidence

15

and finds that genuine issues of material fact exist precluding the grant of summary judgment in favor of either party regarding these defenses and whether the method by which the Plaintiffs were paid constitutes a salary basis under the FLSA. The Court shall therefore deny the parties' competing motions for summary judgment regarding these defenses.

In sum, the Court finds that the parties' competing motions and voluminous evidence make clear that genuine issues of material fact exist as to the Plaintiffs' status and the Defendants' defenses, and that a jury determination of the competing facts is necessary in order to determine the validity of the Plaintiffs' claims and the potential merit of the Defendants' defenses.

### IV. Conclusion

For all of the foregoing reasons, the Court finds that the Defendants' motion to decertify this matter as a FLSA collective action should be denied. The Plaintiffs have demonstrated that they are sufficiently similarly situated for this action to proceed collectively. The Court further finds that the parties' competing motions for summary judgment should be denied – genuine issues of material fact exist and neither side is entitled to judgment as a matter of law at this juncture.

An order in accordance with this opinion shall issue this day.

This, the 3rd day of February, 2022.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE