IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MEGAN BRITT, BRETT HAWKINS,
STEVE HARBOUR, JASON NORMAN,
BRIAN MILEY, CLINT BUCKLEY, and
JASON BAKER, individually and on behalf
of others similarly situated                                              PLAINTIFFS

VS.                                         CIVIL ACTION NO. 1:18-CV-38-GHD-DAS

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY, SOUTHERN
FARM BUREAU LIFE INSURANCE
COMPANY, and SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY                                                DEFENDANTS

**OPINION DENYING PARTIES' MOTIONS TO EXCLUDE EXPERT TESTIMONY**

Presently before the Court are the parties' competing motions [399, 405, 406, 408, 414] to exclude expert testimony in this overtime collective action. Specifically, the Defendants have moved to exclude the testimony of the Plaintiffs' statistician, Liesl Fox, Ph.D. [399], and the Plaintiffs have moved to exclude the testimony of three of the Defendants' expert witnesses: accounting expert Cecil Harper, C.P.A. [406]; actuarial science expert Christopher Burkhalter [408]; and insurance industry expert Ernest Csiszar [405, 414]. Upon due consideration and for the reasons set forth below, the Court finds that the motions should be denied.

**I.      Background**

The Plaintiffs are twelve current and former insurance agents who sold insurance policies for the Defendants in Mississippi. While the Defendants classified the Plaintiffs as independent contractors, the Plaintiffs contend that the Defendants exerted a sufficient level of control over them to make them employees, that they all worked in excess of 40

hours a week, and that Defendants did not pay them overtime, in violation of the FLSA. Trial in this matter is set for March 7, 2022.

Both sides have designated various expert witnesses and have moved to exclude expert witnesses slated to testify for the opposing side. Specifically, the Defendants have moved to exclude the testimony of the Plaintiffs' statistician, Liesl Fox, Ph.D. The Plaintiffs have moved to exclude the testimony of three of the Defendants' expert witnesses: Cecil Harper, Christopher Burkhalter, and Ernest Csiszar. Neither side requests a hearing in conjunction with any of the pending motions to exclude testimony.

**II. Standard of Review**

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. The admissibility of expert testimony is further governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *Watkins v. Telsmith*, 121 F.3d 984, 988-89 (5th Cir. 1997).

The purpose of Rule 702 is to guide the district court's gatekeeping function. *Guy*, 394 F.3d at 325. Before allowing a witness to testify as an expert, a court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill,

2

experience, training, or education.' " *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702). The *Daubert* analysis applies to the process in which a qualified expert reaches his conclusions, not to the merits of the conclusions themselves. *Guy*, 394 F.3d at 325. The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

Finally, the "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id.* (internal quotation marks omitted). The proponent of the testimony, here the Plaintiffs, bear the burden by a preponderance of the evidence to establish the reliability of the expert's testimony. *Johnson v. Arkema, Inc.*, 686 F.3d 452, 458 (5th Cir. 2012); *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

### III. Analysis

#### A. Plaintiffs' Expert Statistician: Liesl Fox, Ph.D.

The Defendants move the Court to exclude the testimony of Liesl Fox, PhD, the Plaintiffs' retained expert statistician [399]. The Defendants argue, essentially, that Fox has improperly calculated the Plaintiffs' potential damages in this case because her

3

estimate of those damages is based on "the Plaintiffs' unsubstantiated, self-estimated hours they claimed to have worked each week during the relevant time period" and that her testimony is therefore unreliable and will not aid the jury.

    Dr. Fox is a Senior Consultant and Partner at Quantitative Research Associates, a firm that provides statistical and computing services. Dr. Fox has over 25 years of experience as a statistical consultant and holds a B.S. in mathematics from Missouri Southern State College and an M.S. and Ph.D. in Biostatistics from the University of Alabama at Birmingham. She has provided expert statistician testimony, by deposition or at trial, in fourteen federal court cases in the last four years, primarily in FLSA overtime cases such as this one [399-1]. The Court notes that the Defendants do not challenge Fox's expertise in statistics or her qualifications to provide expert testimony. Rather, the Defendants argue that because they disagree with the data that Fox used in computing the overtime that the Plaintiffs claim they are due, her testimony should be excluded. The Court disagrees.

    The Court notes that Dr. Fox is not offering any opinion regarding the number of hours each Plaintiff may have actually worked during the relevant time period. Instead, her testimony is limited to the math that will be used to calculate any damages owed to the Plaintiffs should they prevail at trial. The Plaintiffs, and Dr. Fox, agree that it is the jury that will determine the number of hours each Plaintiff worked each week during the relevant time period should the Plaintiffs prevail on their argument regarding liability, which is also a jury determination.

    It is axiomatic that an expert witness may testify as to potential damages, even when those potential damages are based on relatively straightforward mathematical calculations.

4

*Prejean v. Satellite Cty., Inc.*, 474 F. Supp. 3d 829, 835 (W.D. La. 2020). Dr. Fox indisputably has expertise in statistics and statistical analysis. Here, the Court finds that allowing Fox to utilize and present her specialized knowledge and experience to calculate figures from different sources and synthesize her results will aid the jury in ascertaining the Plaintiffs' alleged damages, and that her testimony thus satisfies both Rule 702 and *Daubert*. *Sudo Properties, Inc. v. Terrebonne Par. Consol. Gov't*, No. 04-2559, 2008 WL 2623000, at *7 (E.D. La. July 2, 2008) (rejecting argument that expert's opinion was simple arithmetic and holding that the opinion was admissible because the expert's "specialized knowledge, regardless of whether his calculations involve complex methodology, will assist the trier of fact" in determining damages); *Charalambopoulos v. Grammar*, No. 3:14-CV-2424, 2017 WL 930819, at *16 (N.D. Tex. Mar. 8, 2017).

Accordingly, the Court rules that Fox will be permitted to testify as to the matters outlined in her expert designation and report, and that the Defendants' arguments for exclusion of Fox's testimony go to the "weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077. The Defendants' motion to exclude her testimony is therefore denied. The Defendants may certainly offer timely objections at trial to any testimony that they deem objectionable, and the Court notes that these expert witnesses will be subject to cross-examination at trial.

### B. Defendants' Accounting Expert: Cecil Harper, C.P.A.

The Plaintiffs move the Court to exclude the testimony of Cecil Harper, C.P.A., the Defendants' retained accounting expert [406]. The Plaintiffs argue, essentially, that Harper's report makes legal conclusions, that he should not be permitted to testify

regarding whether the Plaintiffs were properly classified as independent contractors or whether they were employees, and that his testimony offers facts that will not aid the jury.

Mr. Harper is a Certified Public Accountant and is the President of the accounting firm of Harper, Rains, Knight & Company in Ridgeland, Mississippi [406-1]. He has over 40 years of experience as an accountant and holds a B.S. in Accounting from Mississippi College. He has provided expert accounting and tax testimony, by deposition or at trial, in approximately two dozen cases, including in federal court, in the past several years [406-1]. The Court notes that the Plaintiffs do not challenge Fox's expertise in accounting or his qualifications to provide expert testimony. Rather, the Plaintiffs argue that Harper's testimony should be limited to his area of expertise and that he should not be permitted to offer legal conclusions, including regarding the Plaintiffs' status as employees or independent contractors. The Court agrees that Harper's testimony should be limited to his area of expertise and that he should not testify regarding any conclusions of law. The Court finds, however, that the remainder of his testimony, so limited, will aid the jury and is permissible – he shall be permitted to testify regarding the Plaintiffs' tax returns and the manner in which the Plaintiffs structured their returns. This testimony may help the jury determine a fact in issue and the Court deems it permissible.

The Plaintiffs also assert that Harper's testimony may include conclusions of law that are impermissible. It is axiomatic that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)). The Court notes however, that while experts cannot offer conclusions of law, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); *Goodman*,

6

571 F.3d at 399. The Court is confident that it can protect against the possibility of objectionable expert testimony at trial without resorting to a blanket ban on all testimony by either side's expert witnesses. See, e.g., *Mears v. Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1 (S.D. Miss. July 31, 2019). The parties may offer timely objections to any such testimony at trial and may cross-examine these expert witnesses.

### C. Defendants' Actuarial Expert: Christopher Burkhalter

The Plaintiffs next move the Court to exclude the testimony of Christopher Burkhalter, the Defendants' retained actuarial expert [408]. The Plaintiffs argue that Burkhalter's expected testimony is irrelevant and not helpful to the jury, and that Burkhalter's testimony may offer legal conclusions.

Mr. Burkhalter is the President of the actuarial firm of The Burkhalter Group in Madison, Mississippi [408-1]. He is a Fellow of the Casualty Actuarial Society and a Member of the American Academy of Actuaries. Burkhalter has been retained by the Defendants to provide testimony as to whether the Plaintiffs compensation arrangement with the Defendants guaranteed the Plaintiffs an income in excess of the statutory minimum required to meet the salary or fee basis prong of the FLSA's white-collar exemptions, which is an issue in this case.

The Plaintiffs do not challenge Burkhalter's expertise in actuarial science or his qualifications to provide expert testimony. Rather, the Plaintiffs argue that Burkhalter's testimony should be excluded because it is irrelevant and will not be helpful to the jury and because his testimony may offer impermissible legal conclusions.

While the Court agrees with the Plaintiffs that Burkhalter, as is the case with the other expert witnesses who may testify at the trial of this matter, should not be permitted

7

to testify regarding any conclusions of law, the Court finds that Burkhalter's testimony is relevant and will aid the jury. *Renfroe*, 974 F.3d at 598 (holding that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues."). Whether the Plaintiffs were paid under a salary or fee basis is a jury issue that relates to one or more of the Defendants' defenses. Accordingly, the Court finds that Burkhalter's testimony, in which he supports the Defendants' position that certain Plaintiffs may be exempt from the FLSA's overtime requirement, is permissible.

As for any possible legal conclusions offered by Burkhalter during his testimony, as noted above, the Court is confident that it can protect against the possibility of objectionable expert testimony at trial without resorting to a blanket ban on all testimony by either side's expert witnesses. *Mears*, 2019 WL 3483157, at *1. The Plaintiffs may offer timely objections to any such testimony at trial, and the Court notes that expert testimony is subject to cross-examination at trial.

### D. Defendants' Insurance Industry Expert: Ernest Csiszar

The Plaintiffs move the Court to exclude the testimony of Ernest Csiszar, Esq., the Defendants' retained insurance expert [405, 414]. The Plaintiffs argue that Csiszar's report makes legal conclusions and that his testimony offers facts that will not aid the jury.

Mr. Csiszar is an attorney with over 30 years' experience in the insurance industry [414-1]. He is a retired Professor from the University of South Carolina School of Business, where he taught insurance-related courses, served as the Director of the South Carolina Department of Insurance, was President of the National Association of Insurance Commissioners, and was President and CEO of the Property and Casualty Insurers Association of America, among other insurance-related posts. He has provided expert

8

insurance-related testimony, by deposition or at trial, in approximately two dozen cases, including in federal court, in the past five years [414-1]. The Court notes that the Plaintiffs do not challenge Csiszar's expertise or his qualifications to provide expert testimony. Rather, as is the case with the above witnesses, the Plaintiffs argue that Csiszar should not be permitted to offer legal conclusions, including regarding the Plaintiffs' status as employees or independent contractors and whether any FLSA exemptions apply to any of the Plaintiffs.

The Court agrees that Csiszar's testimony should be limited to his area of expertise and that he should not testify regarding any conclusions of law. The Court finds, however, that the remainder of his testimony, so limited, will aid the jury and is permissible – he shall be permitted to testify regarding the framework of insurance regulation and the industry's regulatory environment, how regulation impacts the sale of insurance, and insurance industry standards and requirements. The Court finds that this testimony may help the jury determine one or more facts in issue and the Court deems it permissible. Finally, once again, as for any possible legal conclusions offered by Csiszar during his testimony, as noted above, the Court is confident that it can protect against the possibility of objectionable expert testimony at trial without resorting to a blanket ban on all testimony by either side's expert witnesses. *Mears*, 2019 WL 3483157, at *1. The Plaintiffs may offer timely objections to any such testimony at trial and may cross-examine this witness.

### IV. Conclusion

For all of the foregoing reasons, the Court finds that the Defendants' motion to exclude the testimony of Liesl Fox, PhD. [399] should be denied, and the Plaintiffs' motions to exclude the testimony of Cecil Harper [406], Christopher Burkhalter [408], and

Ernest Csiszar [405, 414] should likewise be denied. These expert witnesses shall be permitted to offer expert testimony at the trial of this matter as outlined and limited above.

An order in accordance with this opinion shall issue this day.

This, the 11th day of February, 2022.

_____
SENIOR U.S. DISTRICT JUDGE